Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@calljustice.com*
Arby Aiwazian (Cal. State Bar No. 269827)
*arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
*joanna@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
450 North Brand Blvd., Suite 900
Glendale, California 91203
Telephone (818) 265-1020
Facsimile (818) 265-1021

Graham B. LippSmith (Cal. State Bar No. 221984)
*g@lippsmith.com*
Celene Chan Andrews (Cal. State Bar No. 260267)
*cca@lippsmith.com*
Jaclyn Anderson (Cal. State Bar No. 258609)
*jla@lippsmith.com*
**LIPPSMITH LLP**
555 S. Flower Street, Suite 3000
Los Angeles, California  90071
Telephone (213) 344-1820
Facsimile (213) 513-2495

*Attorneys for* Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL TURNER, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act; <br><br> Plaintiff, <br><br> vs. <br><br> LTF CLUB MANAGEMENT CO, LLC, an unknown business entity; LIFE TIME FITNESS, INC., an unknown business entity; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.:  2:20-cv-00046-DAD-JDP <br> District Judge Dale A. Drozd <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT** <br><br> **[DECLARATIONS OF GRAHAM B. LIPPSMITH, JOANNA GHOSH, SAMUEL TURNER, JACOB KAMENIR, AND PROPOSED ORDER FILED CONCURRENTLY HEREWITH]** <br><br> Date:    March 17, 2025 <br> Time:    1:30 p.m. <br> Courtroom:  4, 15th Floor <br> Complaint Filed: November 21, 2019 <br> Trial Date: None Set |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**

**APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR**

**COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, March 17, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Dale A. Drozd in Courtroom 4, 15th Floor of the United States District Court, Eastern District of California, located at 501 I Street, Sacramento, California, 95814, Plaintiff Samuel Turner ("Plaintiff") hereby moves for an order:

1.      Granting preliminary approval of the January 2025 Joint Stipulation of Class Action and PAGA Settlement ("Settlement Agreement[1]") between Plaintiff and Defendants Life Time, Inc. (erroneously sued as Life Time Fitness, Inc.) and LTF Club Management Co., LLC, (collectively, "Defendants" or "Life Time"), which is attached as **Exhibit A** to the Declaration of Graham B. LippSmith filed in support of this Motion;

2.      Granting provisional certification of the Class for settlement purposes;

3.      Provisionally appointing Plaintiff Samuel Turner as Class Representative;

4.      Provisionally appointing as Class Counsel Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers *for* Justice, PC, and LippSmith LLP;

5.      Appointing Simpluris, Inc. ("Simpluris") to serve as the Settlement Administrator and approving the Notice Plan Simpluris has provided;

6.      Approving the Notice, attached as **Exhibit 1** to the Settlement Agreement;

7.      Directing Simpluris to effectuate the Notice Plan, including mailing Notice to Class Members;

8.      Scheduling a Final Approval Hearing, at which time the Court will also consider whether to grant final approval of Plaintiff's requests for Attorney Fees and Costs, Service Payment for Plaintiff, Settlement Administration Costs, and payment to the California Labor and

---

[1] To the extent they are not specifically defined herein, all capitalized terms have the same meaning as in the Settlement Agreement, attached as **Exhibit A** to the Declaration of Graham B. LippSmith in support of this Motion.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1  Workforce Development Agency ("LWDA"). Plaintiff requests that the Court set a Final

2  Approval Hearing for at least 95 days after entering an order granting preliminary approval of

3  the Settlement.

4      Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 23(e), which

5  governs court approval of class action settlements; Federal Rule of Civil Procedure 23(g), which

6  governs court appointment of class counsel; and Labor Code section 2699, which sets forth

7  PAGA provisions.

8      All Parties have signed the Settlement Agreement. Defendants do not oppose this Motion.

9      Plaintiff has submitted the Settlement Agreement to the LWDA concurrently with this

10 Motion pursuant to Labor Code section 2699(l)(2). Plaintiff has also satisfied the prerequisites

11 under Labor Code section 2699.3(a), including, but not limited to, providing the LWDA and the

12 employer with written notice of the specific provisions of the Labor Code he alleges Defendants

13 violated, including the facts and theories to support the alleged violations, by way of written

14 correspondence sent U.S. Certified Mail, on September 17, 2019. Plaintiff will update the Court

15 if the LWDA responds to the letter that was sent on Plaintiff's behalf.

16     Based on (1) the following memorandum of points and authorities; (2) the Declaration of

17 Graham B. LippSmith, with the January 2025 Joint Stipulation of Class Action and PAGA

18 Settlement attached as **Exhibit A**; (3) the Declaration of Joanna Ghosh; (4) the Declaration of

19 Samuel Turner; (5) the Declaration of Jacob Kamenir on Behalf of Simpluris, Inc.; and (6) the

20 [Proposed] Order Granting Preliminary Approval of Class Action and PAGA Settlement filed

21 concurrently herewith, as well as the pleadings and other records on file with the Court in this

22 matter, and the evidence and oral argument that may be presented at the hearing on this motion,

23 Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement.

24

25 Dated: January 28, 2025                **LIPPSMITH LLP**

26

27                           By:    */s/ Graham B. LippSmith*
                                      Graham B. LippSmith
28                                    Celene Chan Andrews

2

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Jaclyn L. Anderson

**LAWYERS *for* JUSTICE, PC**
**Edwin Aiwazian**
Arby Aiwazian
Joanna Ghosh

*Attorneys for* Plaintiff

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................2

III.    SUMMARY OF SETTLEMENT TERMS.....................................................2

IV.     LEGAL STANDARD...............................................................................5

V.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL...................................5

      A.      The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations That Considered the Strengths and Weaknesses of Plaintiff's Case, the Risk of Further Litigation, and the Amount Offered in Settlement....................................6

           1.      The Settlement Resulted from Arm's-Length Bargaining.......................6

           2.      The Settlement Resulted from Extensive Investigation and Discovery, Allowing the Court and Counsel to Act Intelligently ..............................8

      B.      The Settlement Does Not Grant Improper Preferential Treatment to Class Representatives or Other Segments of the Class ................................9

      C.      The Settlement Falls Within the Range of Possible Approval ...........................10

      D.      The Settlement Has No Obvious Deficiencies...................................15

VI.     CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE...........................................................................15

      A.      The Class Is Sufficiently Numerous ..................................16

      B.      The Class Members Share Common Questions of Law and Fact .....................16

VII.    THE COURT SHOULD PROVISIONALLY APPOINT A CLASS REPRESENTATIVE ....................................................................17

VIII.   THE COURT SHOULD PROVISIONALLY APPOINT CLASS COUNSEL .............18

IX.     THE COURT SHOULD APPOINT SIMPLURIS AS SETTLEMENT ADMINISTRATOR ................................................................19

X.      THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE .................20

XI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................21

XII.    CONCLUSION.............................................................................222

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Transit Union v. Superior Court,* 46 Cal. 4th 993 (2009) ....................................7

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ....................................................7

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)........................................................15

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)........................................................12

*Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784 (C.D. Cal. May 11, 2010).............14

*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)........................................................11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...............................................6

*Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) ...............................7

*Giroux v. Essex Prop. Tr., Inc.,* 2018 WL 2463107 (N.D. Cal. June 1, 2018)..............................5

*Hanlon v. Chrysler Corp.,* 150 F. 3d 1011 (9th Cir. 1998) ...........................................................5

*Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)..............................6

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008)............................................................5

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116 (2008)................................................8

*In re Lenovo Adware Litig.*, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) .................................5

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (2000) ......................................................................16

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .......................................15

*Litty v. Merrill Lynch & Co.*, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ...............................7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)................15

*Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777 (N.D. Cal. Apr. 2, 2010)..........14

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................9, 10

*Rose v. City of Hayward*, 126 Cal. App. 3d 926 (1981) ..............................................................16

*Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. Nov. 4, 2020)..............19

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)..........................................................................20

*Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 6633396 (E.D. Cal. Nov. 21, 2014) ...................7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .....................................................................9

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Syncor ERISA Litig*, 516 F.3d 1095 (9th Cir. 2008) ............................................................5

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ....................................................15, 16

*Wang v. Chinese Daily News, Inc.,* 737 F.3d 538 (9th Cir. 2013) ...............................................17

**Statutes**

Lab. Code § 226.7 ........................................................................................................................11

Lab. Code § 226.7(c) ....................................................................................................................12

Lab. Code § 510 ...........................................................................................................................11

Lab. Code § 512(a) .......................................................................................................................11

Lab. Code § 1198 .........................................................................................................................11

Lab. Code § 2699(e)(2) ..................................................................................................................7

Lab. Code § 2699(f)(2) ...................................................................................................................7

Lab. Code § 2699(i) .....................................................................................................................14

Lab. Code § 2699(j) .....................................................................................................................14

**Other Authorities**

Rubenstein, *Newberg and Rubenstein on Class Actions* § 8.17 (6th ed., June 2022 update) ......21

**Rules**

Fed. R. Civ. P. 23(a)(1) ...............................................................................................................15

Fed. R. Civ. P. 23(a)(2) ...............................................................................................................15

Fed. R. Civ. P. 23(b)(3) ...............................................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................19

Fed. R. Civ. P. 23(e)(1) ...............................................................................................................19

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Samuel Turner ("Plaintiff") seeks preliminary approval of this settlement as set forth in the Joint Stipulation of Class Action and PAGA Settlement ("Settlement Agreement") between Plaintiff, on the one hand, and Defendants Life Time, Inc. (erroneously sued as Life Time Fitness, Inc.) and LTF Club Management Co., LLC, (collectively, "Defendants" or "Life Time") on the other hand. Declaration of Graham B. LippSmith ("LippSmith Dec.") Exhibit A.[2]

The proposed Settlement Class is currently estimated to consist of 7,518 individuals who worked an estimated 323,000 workweeks from November 21, 2015 to October 10, 2024. Settlement Agreement ¶ 1.3. Class Members who do not opt out of the Settlement will receive a pro rata share of the allocated Net Settlement Amount based upon the number of weeks worked, as defined by the Settlement Agreement ("Individual Payment Amount"). *Id.* at ¶¶ 1.18, 4.2.2. If the Court approves the Settlement, the Maximum Settlement Amount of $1,250,000 will be distributed as follows: (1) Individual Payment Amounts to proposed Class Members, estimated to total $472,700; (2) Service Payment to Plaintiff, proposed at an amount not to exceed $10,000 (*id.* at ¶¶ 1.19, 4.8); (3) reasonable third-party administration costs, which the parties estimate will not exceed $45,300 (*id.* at ¶ 1.19); (4) attorney fees of up to $437,500 and reimbursement of litigation costs and expenses not to exceed $97,000 ("Attorneys' Fees and Costs") (¶¶ 1.19, 4.7); (5) payment in the amount of $140,625.00 to the Labor Workforce Development Agency, representing 75% of the amount allocated toward PAGA civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 (*id.* at ¶ 1.19); and (6) the remaining 25% of PAGA civil penalties, in the amount of $46,875.00, will be part of the Net Settlement Amount for distribution to the PAGA Aggrieved Employees on a *pro rata* basis ("PAGA Penalty Payment") (*id.* at ¶¶ 1.19, 4.2.2).

Class Members who do not opt out are Settlement Class Members. *See* Settlement Agreement ¶¶ 4.6.3, 4.12.1, 4.12.3. For non-PAGA claims, the Settlement resolves Plaintiff's and Settlement Class Members' Released Claims against the Released Parties. *Id.* at ¶ 1.26. For the PAGA claims, the Settlement binds all PAGA Aggrieved Employees and the State of

---

[2] All capitalized terms have the meaning as set forth in the Settlement Agreement.

California. *Id*. Plaintiff also seeks provisional certification of the following Class solely for settlement purposes: all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from November 21, 2015, through the Preliminary Approval Date. *Id.* at ¶ 1.3. Finally, Plaintiff asks the Court to set a Final Approval Hearing for at least 95 days after entering an order granting preliminary approval.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants operate premium athletic clubs, including in California. Defendants formerly employed Plaintiff. Plaintiff filed a class action and PAGA complaint against Defendants on November 21, 2019, in the Sacramento County Superior Court, Case No. 34-2019-00269609. On January 6, 2020, Defendants removed this action to federal court. On January 13, 2020, Defendants filed a Motion to Dismiss Plaintiff's Complaint. On September 4, 2020, Plaintiff filed a First Amended Class Action Complaint. On September 18, 2020, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. On April 25, 2022, Plaintiff filed a Second Amended Class Action Complaint against Defendants, alleging that Defendants engaged in uniform practices and procedures that violate the Labor Code, including failure to do the following: pay regular, minimum, and overtime wages properly, pay all compensation due for all work performed, including pre-shift, post-shift, and meal and rest periods wages; accurately calculate the regular rate for meal, rest, and overtime premiums; provide compliant meal periods, rest periods, and associated premium pay; pay timely wages during employment and upon termination; provide compliant wage statements; maintain requisite payroll records; and reimburse necessary business expenses. Plaintiff also filed a PAGA cause of action. Plaintiff contends the putative class is entitled to unpaid wages; penalties, including PAGA penalties; and Attorneys' Fees and Costs. Defendants deny liability, wrongdoing, and that class treatment is appropriate for any purpose other than settlement.

## III.    SUMMARY OF SETTLEMENT TERMS

In the proposed Settlement, Defendants will pay the $1,250,000 Maximum Settlement Amount into a Qualified Settlement Fund. Settlement Agreement ¶¶ 1.19, 1.25. The Net

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Settlement Amount is the Maximum Settlement Amount less Attorneys' Fees and Costs, third-party administration costs, Service Payment, and the payment to the LWDA in the amount of $140,625 (representing 75% of the PAGA civil penalties.) *Id.* at ¶ 1.20. The Administrator will facilitate the calculation of each Settlement Class Member's pro rata share of the Net Settlement Amount ("Individual Payment Amount") as follows:

- Defendants will use time records to calculate Workweeks, which reflect the total number of weeks that Settlement Class Members worked as non-exempt employees in California during the Class Period. Settlement Agreement ¶ 4.2.2. Any workweeks during the Class Period in which a Settlement Class Member did not actually work (*i.e.*, while on a leave of absence) are not included in that Settlement Class Member's Individual Payment Amount. *Id.*
- Within 30 calendar days of preliminary approval, Defendants will provide the Settlement Administrator with the number of Workweeks each Class Member worked. *Id.* at ¶ 4.5.1.
- The Settlement Administrator will calculate each Class Member's Individual Payment Amount by dividing the Settlement Class Member's total number of workweeks that the Settlement Class Member worked for Defendants in California during the Class Period by the total number of workweeks all Settlement Class Members worked for Defendants during the Class Period, and (ii) multiplying that pro rata share by the allocated amount of the Net Settlement Amount. *Id.* at ¶ 4.2.2.

The Settlement allocates 20% of Individual Payment Amounts to wages reported on a Form W-2 and 80% to non-wages and interest reported on a Form 1099. Settlement Agreement ¶ 4.2.3. The Settlement Administrator will issue Individual Payment Amounts after withholding deductions for employees' share of payroll taxes. *Id.* at ¶¶ 4.2.2, 4.3.1. Defendants will cover their portion of payroll taxes, plus the Maximum Settlement Amount. *Id.* at ¶ 1.19.

Class Members may opt out of the Settlement by submitting a Request for Exclusion to the Settlement Administrator within 60 calendar days of the mailing of the Notice ("Response Deadline"). Settlement Agreement ¶¶ 1.10, 4.6.3, 4.6.4. The signed Request for Exclusion must include the Class Member's full name, address, and telephone number; must include the case name and number; and shall be signed by the Class Member. *Id.* at ¶ 4.6.3. A Class Member who opts out will not be entitled to an Individual Payment Amount and will not be bound by the terms of the Settlement but will still receive a PAGA Penalty Payment. *Id.* at ¶¶ 1.19, 4.6.5. Failure to submit a valid and timely Request for Exclusion means the Class Member is bound by all terms

3

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1  of the Settlement and final judgment. *Id.* ¶ 4.6.5.

2      The Notice will inform Class Members of their number of Workweeks during the Class

3  Period based on Defendants' records. Settlement Agreement ¶¶ 1.21, 4.6.2, Ex. 1. Class

4  Members may dispute this information by providing the Settlement Administrator with

5  additional information and documentation ("Dispute") postmarked on or before the Response

6  Deadline. *Id.* at ¶ 4.6.2. A Class Member must submit a Dispute with their name, the case name

7  and number, number of workweeks they claim they worked, and any supporting documentation.

8  *Id.* The Settlement Administrator will consult with the Parties to decide whether to adjust the

9  Individual Payment Amount. *Id.* As a last resort, the Parties will bring any unresolved disputes to

10  the Court. *Id.* Within five calendar days of receiving returned Notices, the Settlement

11  Administrator shall remail any returned Notice to the forwarding address. *Id.* at ¶ 4.5.2. If no

12  forwarding address is provided, the Settlement Administrator shall promptly attempt to find a

13  correct address, using skip-tracing to search by name, address, and/or Social Security number

14  and by contacting Class Counsel and Defense Counsel. *Id.* Upon locating an address, the

15  Settlement Administrator shall promptly remail the Notice. *Id.*

16      Class Members objecting to the Settlement may submit a written statement ("Objection")

17  to the Settlement Administrator, postmarked on or before the Response Deadline. Settlement

18  Agreement ¶¶ 4.6.7–8. The Settlement Class Member must sign the Objection and include their

19  full name; the case name and number; objection grounds; and legal briefs, papers, or memoranda

20  the objector will submit to the Court. *Id.* at ¶ 4.6.7. The Settlement Administrator will notify all

21  Parties of any Objection. *Id.* at ¶ 4.6.9. Class Members who fail to object still have the right to

22  appear at the Final Approval Hearing to state objection(s). *Id.* No later than the filing of

23  Plaintiff's Motion for Final Approval, the Settlement Administrator shall enable Class Counsel

24  to file a declaration with a complete list of all objectors and shall authenticate all Objections

25  received. *Id.* The Settlement Administrator's declaration shall also attach all Objections received.

26  *Id.*

27      Settlement checks undeposited 120 calendar days after the issuance of Settlement

28  Proceeds will be voided and cancelled. Settlement Agreement ¶ 4.11.4. The Settlement

4

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1   Administrator shall then redistribute the remaining uncashed Settlement Proceeds to Class

2   Members who cashed their initial payments (*id.*), which serves the public interest and the interest

3   of the Settlement Class. Undeposited checks from the second distribution will be cancelled and

4   voided 120 calendar days after that distribution. *Id.* The Settlement Administrator will deliver

5   proceeds remaining after the second issuance to Legal Aid at Work or otherwise distribute them

6   as ordered by the Court. *Id.* No unclaimed funds will be deposited into the Industrial Relations

7   Unpaid Wage Fund. The Settlement will resolve the Settlement Class Members' non-PAGA,

8   Released Claims against Released Parties and Plaintiff's and the State of California's PAGA

9   claims. *Id.* at ¶¶ 4.12.1–4.

10  **IV.    LEGAL STANDARD**

11          Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

12  certified class—or a class proposed to be certified for purposes of settlement—may be settled . . .

13  only with the court's approval." Rule 23 is intended "to protect the unnamed members of

14  the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*, 516

15  F.3d 1095, 1100 (9th Cir. 2008). In approving a class action settlement, the court must conclude

16  that the "compromise is fundamentally fair, adequate, and reasonable." *In re Heritage Bond*

17  *Litig*., 546 F.3d 667, 674–75 (9th Cir. 2008). In granting preliminary approval of a class action

18  settlement, courts must determine "whether provisional class certification is appropriate." *See*

19  *Giroux v. Essex Prop. Tr., Inc.,* 2018 WL 2463107, at *2 (N.D. Cal. June 1, 2018).

20  **V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

21          Courts may preliminarily approve a settlement and notice plan to the class if the

22  proposed settlement: (1) appears to be the product of serious, informed, non-collusive

23  negotiations, (2) does not grant improper preferential treatment to class representatives or other

24  segments of the class, (3) falls within the range of possible approval, and (4) has no obvious

25  deficiencies. *In re Lenovo Adware Litig*., 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018).

26  Courts give "deference to the private[,] consensual decision of the parties." *Hanlon v. Chrysler*

27  *Corp.,* 150 F. 3d 1011, 1027 (9th Cir. 1998) ), *overruled on other grounds by Wal-Mart Stores,*

28  *Inc. v. Dukes*, 564 U.S. 338 (2011). The Ninth Circuit maintains a "strong judicial policy that

favors settlements" of class actions, given the "complex" litigation involved. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### A. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations That Considered the Strengths and Weaknesses of Plaintiff's Case, the Risk of Further Litigation, and the Amount Offered in Settlement

The Settlement accounts for the strengths and weaknesses of each Party's position and the uncertainty about class certification, trial, or both. LippSmith Dec. ¶ 33; *see also* Declaration of Joanna Ghosh ("Ghosh Dec.") ¶ 9. Prior to agreeing to settle this matter, the Parties deposed and obtained information from witnesses. LippSmith Dec. ¶ 30. The Parties' Counsel reviewed documents and information relating to Plaintiff's and Class Members' employment with Defendants and performed significant legal research concerning PAGA representative actions, class certification, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, the Parties' claims and defenses, and the facts. Ghosh Dec. ¶¶ 7–9; LippSmith Dec. ¶¶ 22, 30, 35–36.

#### 1. The Settlement Resulted from Arm's-Length Bargaining

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (internal quotation marks and citation omitted).

Prior to agreeing to the Settlement, the Parties engaged in significant settlement negotiations and participated in a formal mediation session. Ghosh Dec. ¶ 9; LippSmith Dec. ¶¶ 31, 33. Paul Grossman, Esq., a well-regarded mediator experienced in mediating labor and employment matters, conducted the mediation on October 10, 2024. LippSmith Dec. ¶¶ 31, 33.

Prior to and during settlement discussions, the Parties exchanged class information and engaged in an intensive discussion about their evaluations of this matter and various aspects of this case, including the risks and delays of further litigation; whether some claims were subject to dismissal; the risks of proceeding with representative adjudication and class certification; the law on off-the-clock theory, meal and rest periods, wage-and-hour enforcement, and PAGA representative claims; and the evidence the Parties obtained, produced, and analyzed. Ghosh

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Dec. ¶ 9; LippSmith Dec. ¶ 31.

Specifically, the Parties spent considerable time evaluating the procedural challenges of continued litigation. Although wage-and-hour actions are often amenable to resolution for groups of employees, courts sometimes decide otherwise. For instance, some courts have required "manageability" for adjudicating PAGA claims. *See, e.g.*, *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475 at *3–4 (C.D. Cal. Apr. 27, 2015) (dismissing PAGA claim that would require a multitude of individualized assessments). Other courts have required plaintiffs to establish standing and have bifurcated discovery, trial, or both. *Amalgamated Transit Union v. Super. Ct.,* 46 Cal.4th 993, 1001 (2009) (noting PAGA "require[s] a plaintiff to have suffered injury resulting from an unlawful action"); *Stafford v. Dollar Tree Stores, Inc.,* 2014 WL 6633396 at *4 (E.D. Cal. Nov. 21, 2014) (finding judicial economy supported bifurcation because of the difficulties and inherent uncertainties in establishing liability with respect to a large number of potentially aggrieved employees). These issues add uncertainty to continued litigation.

The Parties also spent considerable time evaluating the substance of their claims and defenses in deciding to settle. To prevail on their claims, Plaintiffs must prove that Labor Code violations demonstrate both that employees suffered losses, or injury, and that Defendants' conduct gives rise to penalties. *See*, *e.g.*, *Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp. 2d 1169, 1181–82 (C.D. Cal. 2008). Even if Plaintiff established violations, Defendants likely would characterize those violations as "initial," making heightened "subsequent violation" penalties unwarranted. *See* Lab. Code § 2699(f)(2); *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer has been notified that it is violating a Labor Code provision [. . .], the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties."). Plaintiff's ultimate success on the merits is uncertain.

Finally, the Parties spent considerable time evaluating the potential litigation of remedies. Although PAGA clearly sets forth penalties, courts have discretion in setting those penalties, so that they are not "unjust, arbitrary and oppressive, or confiscatory." *See* Lab. Code § 2699(e)(2).

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Despite these challenges, Plaintiff's Counsel negotiated a Maximum Settlement Amount of $1,250,000. LippSmith Dec. ¶ 33. The Parties calculated the Settlement using information discovered during case investigation, litigation, and exchange of information for mediation. Ghosh Dec. ¶¶ 8–9; LippSmith Dec. ¶ 33. If the Court approves the PAGA Payment, Administration Costs, Service Payment, and Attorneys' Fees and Costs in the Settlement, the Net Settlement Fund is estimated to be at least $519,575. LippSmith Dec. ¶ 40. The amount of each Claimant's Individual Settlement Share and each PAGA Recipient's Settlement Share will be calculated based on their respective Workweeks. Settlement Agreement ¶¶ 4.2.2–3. Plaintiff's Counsel's analysis allowed them to estimate the potential claims on behalf of the Class and State of California and to "conclude[e] that the consideration being paid for the release of those claims represents a reasonable compromise." *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 133 (2008); LippSmith Dec. ¶¶ 37–38. Considering all the facts and circumstances of the Action, the Settlement represents a fair, reasonable, and adequate recovery for the Class. Ghosh Dec. ¶ 8; LippSmith Dec. ¶ 51.

During all settlement discussions, the Parties conducted their negotiations at arm's length, in an adversarial position. Ghosh Dec. ¶ 9; LippSmith Dec. ¶ 31. The Parties each believed in the merits of their claims and defenses. LippSmith Dec. ¶ 33. Defendants and their counsel believed they would prevail at certification and on the merits. Plaintiff and his Counsel felt strongly they would obtain class certification and win at trial. After conducting investigations, conducting formal discovery, exchanging informal discovery, participating in formal settlement negotiations, and participating in continued conversations with the mediator after the mediation, the Parties agreed that this case is well-suited for settlement, given the claims, defenses, legal landscape, and costs and risks of continued litigation. *Id.*

## 2. The Settlement Resulted from Extensive Investigation and Discovery, Allowing the Court and Counsel to Act Intelligently

The Parties have actively litigated this matter since it commenced on November 21, 2019. Prior to reaching the Settlement, Plaintiff's Counsel extensively investigated the veracity, strength, and scope of the claims. Ghosh Dec. ¶¶ 7–9; LippSmith Dec. ¶¶ 30–32. The Parties

1    reached the Settlement based on this large volume of facts, evidence, and investigation. Ghosh

2    Dec. ¶ 9; LippSmith Dec. ¶ 33.

3         Plaintiff's Counsel conducted significant investigation into this case; engaged in formal

4    and informal discovery, including Plaintiff's deposition and the depositions of a handful of

5    Defendants' employees; and reviewed and analyzed thousands of pages of documents and data

6    Defendants produced. Ghosh Dec. ¶ 8; LippSmith Dec. ¶ 31. The volume of data and documents

7    Plaintiff's Counsel reviewed and analyzed included the following, among others: Plaintiff's and

8    other Class Members' employment records; Class Members' time and pay data, including, but

9    not limited to, timecard and wage statement statistics; and Defendants' Employee Handbooks,

10   agreements, forms, and policy and procedure documentation. LippSmith Dec. ¶¶ 22, 30, 42.

11        Plaintiff's Counsel interviewed Plaintiff and other witnesses to gather facts and identify

12   potential witnesses. Ghosh Dec. ¶ 7; LippSmith Dec. ¶ 30. Counsel for the Parties also met and

13   conferred to discuss issues relating to the pleadings, discovery, motion practice, and the

14   production of documents and data. *Id.* Plaintiff's Counsel also prepared for and attended court

15   proceedings and settlement negotiations, including attending mediation. Ghosh Dec. ¶ 7;

16   LippSmith Dec. ¶¶ 30–31.

17        The Parties' active litigation of this matter has allowed Counsel to act intelligently in

18   assessing the fairness and reasonableness of the Settlement.

19       **B.    The Settlement Does Not Grant Improper Preferential Treatment to Class**

20           **Representatives or Other Segments of the Class**

21        The proposed settlement allocates the Net Settlement Amount to Settlement Class

22   Members on a pro rata basis based on the number of weeks worked. Thus, all Settlement Class

23   Members who cash their initial checks will receive a pro rata amount commensurate with the

24   amount of time worked, and no one will receive preferential treatment.

25        The Settlement authorizes Plaintiff to seek a Service Payment of up to $10,000 for his

26   service as Class Representative. The Ninth Circuit has recognized that incentive awards are

27   permissible and do not render a settlement unfair or unreasonable. *Rodriguez v. W. Publ'g Corp.*,

28   563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.");

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. *Rodriguez*, *supra*, 563 F.3d at 958–59 (internal citation omitted).

From the start of this case, Plaintiff has spent considerable time fulfilling his responsibilities to establish his own claims as well as represent other aggrieved employees and the LWDA. Declaration of Samuel Turner ("Turner Dec.") ¶ 4. Plaintiff worked with his counsel on their pre-filing investigation efforts and the filing of the initial Complaint. *Id.* ¶ 5. Plaintiff then followed the case status at every step and provided his counsel with all requested information. *Id.* That information included documents related to his employment and information about non-exempt employees' duties. *Id.* Plaintiff reviewed documents, answered counsel's questions, and conferred with counsel about witnesses and documents that would help establish the proposed class claims. *Id.*; LippSmith Dec. ¶ 46. Plaintiff made himself available at every turn, responding to inquiries as quickly and thoroughly as possible. Turner Dec. ¶ 5; Ghosh Dec. ¶ 10. Plaintiff also sat for a full-day deposition in November 2023. LippSmith Dec. ¶ 46. Further, Plaintiff fully participated in the settlement process, reviewing, considering, and approving the core settlement terms before counsel negotiated the full settlement agreement. Turner Dec. ¶ 6; LippSmith Dec. ¶ 47. Plaintiff has and continues to regularly check in with counsel about the status of the case. Turner Dec. ¶ 5. Throughout the case, Plaintiff has done what his counsel has asked of him and consistently considered what is fair for other, aggrieved employees of Defendants who had experiences like his and considered what is fair for the LWDA. *Id.* ¶ 7. Last, Plaintiff agreed to a broader release of his individual claims as an important condition of the Settlement. *Id.*

### C.     The Settlement Falls Within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (internal quotation marks and citations omitted). To determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview factors that ultimately inform final approval, which may include the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

First, the Class's expected recovery, weighed against the value of the settlement offer and considering the strength of Plaintiff's case, supports approval of the Settlement. Assuming that every member of the 7,518-member class was unpaid for one hour for 323,000 workweeks at the average overtime rate of $24.18—which represents a high rate of overtime violations—unpaid overtime damages would be $7,810,140. *See* Lab. Code §§ 510 and 1198; LippSmith Dec. ¶ 34. Assuming just one violation of meal and rest break damages for every employee for 323,000 workweeks, meal and rest break damages would be $5,206,760 based on Plaintiff's estimated average hourly rate of $16.12. *See* Lab. Code §§ 226.7 and 512(a); LippSmith Dec. ¶ 34.

Discovery and investigation show a class size of 7,518 employees who worked an estimated 323,000 workweeks from November 21, 2015, through October 10, 2024. LippSmith Dec. ¶ 34. Plaintiff estimates an average rate of pay of $16.12 per hour based on Defendants' data. *Id.* Based on Plaintiff's experiences, their Counsel's investigation and discovery, and Defendants' data, Defendants' most demonstrable violations are for failures to pay meal and rest break premiums. *Id.* at ¶ 35. In Plaintiff's view, these violations are more discernable from Defendants' payroll data than, for example, violations for failures to pay overtime and waiting time, to reimburse business expenses, and for wage statement errors. *Id.* Defendants' meal and rest break violations are also less vulnerable to defenses that violations were trivial or not willful. *Id.* Thus, on the merits of the claims, Defendants' meal and rest break violations drove settlement discussions, so Plaintiff anticipates they would drive the potential outcomes of litigation. *Id.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

As discussed at mediation, off-the-clock work was attributed to the fact that Plaintiff's and Class Members' job duties allegedly included responding to inquiries from supervisors and to attend to order-related matters before clocking in for their scheduled shifts or during work breaks. LippSmith Dec. ¶ 36. Plaintiff contends that Defendants also failed to always authorize and permit paid rest breaks because Plaintiff and Class Members did not always get full ten-minute, uninterrupted rest breaks within the first four hours of their shift or major fraction thereof, and each subsequent four hours worked thereafter or major fraction thereof.

Plaintiff contends Defendants' policies violate Labor Code section 512(a) and these policies translated into missed, late, or short meal periods in the data. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1041 (2012); *see also* LippSmith Dec. ¶ 34. Plaintiff estimates that the percentage of qualifying shifts when employees suffered a missed, late, or short meal period was 34.89%. *Id.* ¶ 37. Plaintiff also estimates that of the meal periods recorded, 40.7% of second meals were missed and approximately 10–17% of all qualifying shifts included at least one violation. *Id.*

Direct extrapolation of at least a 10% meal violation rate to the to the 1,615,000 shifts at issue (323,000 workweeks x 5 days) yields approximately 161,500 violations. LippSmith Dec. ¶ 38. Applying Plaintiff's estimate of Defendants' average hourly pay rate of $16.12, the maximum meal and rest break award would be $2,603,380. *Id.*; Lab. Code § 226.7(c). If Defendants were to defeat class certification, rebut the *Bradley* presumptions, or undermine data extrapolation, it would negate or significantly reduce any recovery. For example, if Defendants prove only one meal and rest break violation per workweek, that award would be $1,816,638.56. LippSmith Dec. ¶ 38. Of course, the derivative PAGA claims also yield a wide range of potential outcomes. *Id.*

For claims for failures to pay overtime or waiting time, to reimburse business expenses and for wage statement errors, Plaintiff's individual experience and evidence from sampled employee files informed and supported those claims. However, given the nature of those claims and what the Parties gleaned from Defendants' data at this juncture, Plaintiff contends that Defendants' meal and rest break violations will likely drive the potential outcome of this

12

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1  litigation. LippSmith Dec. ¶ 39.

2      These valuations show high ranges of recoveries at issue here, assuming regular

3  violations impacting every employee every week, which would be challenging to prove. More

4  importantly, though, actually achieving these kinds of recoveries requires Plaintiff to run the

5  table by winning class certification, beating all dispositive motions, qualifying all of his experts

6  and opinions, proving the types and frequencies of violations at trial, beating post-trial motions,

7  and surviving appeals on all of the above in the Ninth Circuit. Each of these hurdles in and of

8  itself represents a major discounting factor so that even Plaintiff's most outsized hypothetical

9  recovery years from now fairly aligns with what the Settlement provides Class Members and

10 PAGA Aggrieved Employees today. The Settlement provides a fair recovery to Class Members

11 and PAGA Aggrieved Employees now, without further delay due to continued litigation.

12     Second, the settlement amount is adequate given the expense, complexity, and duration

13 of further litigation. To prevail in this action, Plaintiff would be required to move successfully

14 for class certification pursuant to Rule 23, defeat summary judgment, and receive a favorable

15 verdict capable of withstanding a potential appeal. The risks and costs associated with class

16 action litigation weigh strongly in favor of settlement.

17     Third, whether class certification can be maintained through trial also weighs in favor of

18 settlement. Certifying a class composed of 7,518 current and former employees presents

19 complex issues that could undermine certification at the class certification stage as well as at

20 other, later stages of the litigation.

21     Fourth, the $1,250,000 Maximum Settlement Amount is reasonable given the stage of the

22 proceedings and the defenses asserted in this action. The Maximum Settlement Amount

23 constitutes a fraction of Defendants' potential statutory damage exposure based on Plaintiff's

24 estimated  average hourly rate of $16.12 culled from data sampling, the class size of 7,518

25 individuals, the number of pay periods and workweeks, and the estimated number of violations

26 based on data sampling.

27     In addition to fairness, the Court should evaluate whether the settlement advances

28 PAGA's primary objective "to incentivize private parties to recover civil penalties for the

13

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1  government that otherwise may not have been assessed and collected by overburdened state

2  enforcement agencies." *See Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777, at *4

3  (N.D. Cal. Apr. 2, 2010). PAGA penalties must, in part, "be distributed to the [LWDA] for

4  enforcement of labor laws . . . and for education of employers and employees about their rights

5  and responsibilities under this code, to be continuously appropriated to supplement and not

6  supplant the funding to the agency for those purposes." *See* Lab. Code § 2699(j)[3]. As here, a

7  PAGA settlement distributing 75% of civil penalties to the LWDA and 25% of the civil penalties

8  to the aggrieved employees fulfills PAGA's express objectives. *Id.* at § 2699(i).

9  Fifth, the Parties have undertaken sufficient discovery to inform their view of the

10  reasonableness of the Settlement. The Parties engaged in formal and informal discovery,

11  propounding written discovery, engaging experts, and exchanging documents and data.

12  Sixth, Counsel's experience and their respective views of the Settlement weigh in favor

13  of approving the Settlement. Proposed Class Counsel's qualifications and experience support a

14  determination that Counsel is qualified to represent the Class's interests. Plaintiff's Counsel have

15  extensive experience in employment class actions, including significant wage-and-hour

16  litigation. Ghosh Dec. ¶¶ 2–5; LippSmith Dec. ¶¶ 4–18. Based on that experience, Plaintiff's

17  Counsel believe the Settlement is fair, reasonable, adequate, and is in the best interest of the

18  Class Members. LippSmith Dec. ¶¶ 33, 51. While counsel's recommendations are not

19  conclusive, the Court can properly consider them, particularly where, as here, Plaintiff's Counsel

20  appear competent, have experience with this type of litigation, and have completed significant

21  discovery and investigation. While courts have different views on the weight to accord

22  Counsel's opinions of a settlement agreement, this factor weighs in favor of approving the

23  settlement. *Carter v. Anderson Merchandisers*, *LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11,

24  2010) ("Counsel's opinion is accorded considerable weight.").

25  Seventh, the presence of a governmental participant, does not apply because no

26  governmental entity is a party. The proposed class representative is acting as a Private Attorney

27  General in this case, and the Settlement includes PAGA Penalties to the LWDA. The

28

---

[3] Citations to Labor Code section 2699 refer to the statute in effect at the time of filing the Action in November 2019. Lab. Code § 2699(v)(2).

14

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1   Settlement's allocation of funds to the LWDA and PAGA payments to the class are fair and

2   reasonable and comport with Labor Code § 2699(i).

3           The eighth and final factor, the reaction of class members to the proposed settlement, will

4   be determined after issuing class notice. "[T]he absence of a large number of objections to a

5   proposed class action settlement raises a strong presumption that the terms of a proposed class

6   settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v.*

7   *DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309

8   F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison

9   to class size is typically a factor that supports settlement approval."). "A settlement is not unfair

10  simply because a large number or a certain percentage of class members oppose it, as long as it

11  is otherwise fair, adequate, and reasonable" because "[t]o hold otherwise would put too much

12  power in the hands of a few persons having no right to a preferred position in settlement, to

13  thwart a result that might be in the best interests of the class." *Boyd v. Bechtel Corp.*, 485 F.

14  Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was

15  persuasive that the settlement was adequate). The Parties will know the percentage of objectors

16  before the Final Approval Hearing and provide that information to the Court.

17          **D.      The Settlement Has No Obvious Deficiencies**

18          There are no obvious deficiencies in the settlement. *See*, *supra*, Section III (discussing

19  summary of settlement terms). There are no differences between the settlement class and the

20  proposed class in the operative Second Amended Complaint. There are no differences between

21  the claims to be released and the claims in the operative complaint, other than Plaintiff agreeing

22  to a broader release of his own individual claims that do not apply to the other Class Members.

23  **VI.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS**

24  **        APPROPRIATE**

25          Class certification involves two steps. First, a plaintiff must establish that each of the four

26  requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of

27  representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Second, the plaintiff

28  must establish that at least one of the bases for certification set forth in Rule 23(b) is met. Here,

15

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Plaintiff seeks to certify a class pursuant to Rule 23(b)(3) and must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    The Class Is Sufficiently Numerous

The putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Class of approximately 7,518 people is so numerous that its joinder is impracticable. *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 435 (2000); LippSmith Dec. ¶ 34. Thus, the Class is sufficiently numerous. *See Rose v. City of Hayward*, 126 Cal. App. 3d 926, 934–35 (1981) (holding a class of 42 satisfies numerosity).

### B.    The Class Members Share Common Questions of Law and Fact

A court can certify a Rule 23 class only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of Rule 23(a)(2), even a single common question is sufficient. *Wal-Mart*, 564 U.S. at 359. The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "What matters to class certification . . . is not the raising of common 'questions' - even in droves - but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted).

Here, common issues of fact and law predominate. Defendants' policies and practices concerning overtime and meal break/rest periods implicate the class members' claims as a whole. Based on documents and information obtained through formal and informal discovery and exchange of information for mediation, Plaintiff contends all Class Members were subject to the same or similar job duties and uniform operations and employment practices, policies, and procedures during the Class Period. Plaintiff's claims arise from Defendants' uniform policy and systematic scheme, as to Plaintiff and Class Members, of failing to pay regular, minimum, and overtime wages properly; failing to pay all compensation due for work performed; failing to

16

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

provide compliant meal and rest periods and associated premium pay; and failing to reimburse Plaintiff and Class Members for necessary business-related expenses. LippSmith Dec. ¶ 27. Plaintiff also contends Defendants' payroll and recordkeeping practices were the same as to the Class during the Class Period. Thus, Plaintiff claims Defendants uniformly failed to pay all Class Members all compensation due to them during the Class Period.

These claims involve the same allegations, facts, supporting evidence, and applicable law. Plaintiff argues the outcome of this litigation hinges on Defendants' uniform operations and employment policies and procedures, which applied across its hourly-paid employees during the Class Period. The claims will rise and fall together; common issues predominate.

As discussed, *infra*, in Part XI, Plaintiff's claims are typical of the Class because Defendants employed them during the Class Period, and they suffered wage-and-hour problems typical of the Class. LippSmith Dec. ¶ 27. Also as discussed, *infra*, in Part VII, Plaintiff is an adequate class representative. Moreover, as discussed, *infra*, in Part VIII, Plaintiff's Counsel will fairly, adequately, and zealously continue to protect the interests of the Class. Finally, prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications. Thus, a class action is superior means for the fair adjudication of the case. Accordingly, the Court should certify the Class for settlement purposes only.

## VII.    THE COURT SHOULD PROVISIONALLY APPOINT A CLASS REPRESENTATIVE

Plaintiff respectfully requests provisional appointment as Class Representative. His claims and defenses are typical of the class, and he is adequate to represent the Class's interests pursuant to Rule 23(a)(3). The claims of Plaintiff and putative class members are identical and arise under the same provisions of the California Labor Code. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 608 (C.D. Cal. 2005) ("Since the named Plaintiffs raise the same Labor Code violations as other putative class members, their claims are typical of the class."), *rev'd and vacated on other grounds*, *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538 (9th Cir. 2013) (en banc).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1   Plaintiff's employment file shows that his claims are typical of the Class. LippSmith Dec.

2   ¶ 27. Plaintiff alleges that Defendants engaged in uniform, unlawful practices and procedures,

3   including failure to pay regular, minimum, and overtime wages properly; failure to pay all

4   compensation due for all of the work performed; failure to provide compliant meal periods, rest

5   periods, and associated premium pay; failure to pay timely wages during employment and upon

6   termination; failure to provide compliant wage statements; failure to maintain requisite payroll

7   records; and failure to reimburse necessary business expenses. Plaintiff's individual claims align

8   with those of the Class; his claims and defenses are, therefore, typical of the Class. Moreover,

9   Plaintiff does not have any individual claims or defenses, so he has no conflict with the Class.

10   Plaintiff has zealously pursued this action on the Class's behalf. Plaintiff understands and

11   has taken seriously his role as potential class representative and as California Private Attorney

12   General, stepping up to pursue claims on behalf of others. Turner Dec. ¶ 3. Plaintiff has been

13   available whenever his attorneys needed him and spent time and effort producing relevant

14   documents and providing facts and evidence necessary to help prove the allegations. Ghosh Dec.

15   ¶ 10; Turner Dec. ¶ 5. Plaintiff has also considered what is fair for Class Members and

16   Aggrieved Employees through the pendency of this matter. Turner Dec. ¶ 7. If the Court

17   appoints Plaintiff as Class Representative, he will continue to use his independent judgment on

18   what is fair and reasonable for all Class Members and for the LWDA. *Id*. at ¶ 9. Plaintiff has also

19   agreed to a broader release of his own individual claims that would not apply to the other Class

20   Members. *Id*. at ¶ 7. This Court should provisionally appoint Plaintiff as Class Representative.

21   **VIII.   THE COURT SHOULD PROVISIONALLY APPOINT CLASS COUNSEL**

22   Plaintiff's Counsel have litigated this matter for over five years. LippSmith Dec. ¶ 27. As

23   discussed in Part V.C, *supra,* the work in this matter has been ultimately successful in achieving

24   a substantial settlement. Plaintiff's Counsel are well-experienced in wage-and-hour class action

25   litigation and used that experience to obtain a significant Settlement that includes both a

26   common fund and PAGA Penalties. Ghosh Dec. ¶¶ 2–5; LippSmith Dec. ¶¶ 4–18.

27   The Settlement allows Plaintiff's Counsel to apply for a fee award in an amount of

28   $437,500, or 35% of the Maximum Settlement Amount. Settlement Agreement ¶ 4.7. The

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

Settlement also allows Plaintiff's Counsel to apply for up to $97,000 in litigation costs and expenses. *Id.* The Attorneys' Fees and Costs provided for in the Settlement are commensurate with: (1) the risk Plaintiff's Counsel took in bringing and litigating this case, (2) the extensive time, effort and expense Plaintiff's Counsel have dedicated and will dedicate to the case, (3) the skill and determination Plaintiff's Counsel have shown, (4) the results Plaintiff's Counsel have achieved throughout the litigation, (5) the value of the Settlement Plaintiff's Counsel have achieved for the Class Members and the LWDA, and (6) the other cases Plaintiff's Counsel turned down in order to devote their time and efforts to this matter. LippSmith Dec. ¶ 48. The proposed Notice provides Class Members with information about the amount allocated toward, and to be sought for, Attorneys' Fees and Costs. Settlement Agreement, Ex. 1.

Plaintiff's Counsel have borne all the risks and costs of litigation and will not receive any compensation until recovery is obtained. LippSmith Dec. ¶ 48. Plaintiff's Counsel will submit evidence that their "billing rates" are "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation" *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. Nov. 4, 2020). Of course, Plaintiff's Counsel will provide evidence as to the time worked, litigation efforts, and further argument in Plaintiff's Motion for Final Approval and application for Attorneys' Fees and Costs and at the Final Approval Hearing. Considering the work performed and the risks incurred, the Attorneys' Fees and Costs set forth in the Settlement are well within the range of reasonableness.

**IX.    THE COURT SHOULD APPOINT SIMPLURIS AS SETTLEMENT ADMINISTRATOR**

The Parties agree to the appointment of Simpluris, Inc. as Settlement Administrator. Settlement Agreement ¶ 1.29. Simpluris has extensive experience in class actions. Declaration of Jacob Kamenir ("Administrator Dec."), ¶ 5. Simpluris has provided notification and/or claims administration services in more than 9,000 cases. *Id.* at ¶ 6. Simpluris has handled approximately $9 billion in settlements during the past 15 years. *Id.*

Simpluris will mail the Notice to each Class Member by First Class U.S. mail. Settlement Agreement ¶ 4.5.1. The Settlement Administrator will calculate the Individual Payment Amount

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1 and PAGA Penalty Payment; deduct and transmit applicable state, and/or federal taxes thereon;

2 mail the payment checks to Claimants and PAGA Recipients; issue W-2 and 1099 forms;

3 calculate and disburse the Attorneys' Fees and Costs and Service Payment; and perform such

4 other tasks necessary to effectuate the Notice Plan and terms of the Settlement. *Id.* at ¶¶ 4.2.3,

5 4.3.1, 4.5–4.6, 4.11; Administrator Dec. ¶¶ 8–12. The Settlement Administration Costs are

6 estimated to be $45,300. Administrator Dec. ¶ 13 & Ex. C. The Settlement Administration Costs

7 will be paid out of the Maximum Settlement Amount. Settlement Agreement ¶ 1.19.

8       Accordingly, Plaintiff respectfully requests that the Court appoint Simpluris as the

9 Settlement Administrator and direct Simpluris to effectuate the Notice Plan.

10 **X.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE**

11       The Court "must direct notice in a reasonable manner to all class members who would be

12 bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that

13 is practicable under the circumstances, including individual notice to all members who can be

14 identified through reasonable effort." The notice must "clearly and concisely state in plain, easily

15 understood language" the nature of the action, the class definition, and the class members' right

16 to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that

17 reasonable efforts be made to reach all class members, it does not require that each class member

18 actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the

19 standard for class notice is "best practicable" notice, not "actually received" notice).

20       The proposed Notice describes the terms and conditions of the Settlement; the monetary

21 relief the Settlement will provide to Claimants and PAGA Recipients; the deadlines and

22 procedures to submit a Request for Exclusion, Objection, or Dispute; and the date and time set

23 for the Final Approval Hearing. Settlement Agreement, Ex. 1. The proposed Notice also lists the

24 number of Workweeks credited to each Class Member, states the estimated gross amount of the

25 Class Member's Individual Payment Amount and, if applicable, an estimate of each PAGA

26 Recipient's PAGA Payment. *Id.*

27 *///*

28 *///*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1    The proposed Notice also satisfies all due process requirements and complies with the

2    standards of fairness, completeness, and neutrality. Rubenstein, *Newberg and Rubenstein on*

3    *Class Actions* § 8.17 (6th ed., June 2022 update). Accordingly, the Court should approve the

4    proposed Notice.

5    **XI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

6    Plaintiff seeks approval of the proposed Notice Plan and accompanying deadlines.

7    *Newberg*, at § 8.17; Administrator Dec. ¶¶ 8–12. Within thirty (30) calendar days of the order

8    granting preliminary approval, Defendants must provide Simpluris with Class Member

9    information including: name, last known mailing address, last known email address, last known

10   telephone number, social security number, and the total number of workweeks in California as a

11   nonexempt employee during the Class Period and during the PAGA Period, or the relevant dates

12   from which the Settlement Administrator can separately calculate the number of workweeks for

13   each period. Settlement Agreement ¶ 4.5.1. Within thirty (30) calendar days of receiving the

14   Class Member information, Simpluris must mail the notice to the Class, after searching for

15   updated address information. *Id.* Class Members have sixty (60) calendar days from the Notice

16   mailing to opt out by mailing a signed Request for Exclusion. *Id.* at ¶¶ 1.10, 4.6.3–4. Class

17   Members who object to the Settlement must do so within the same timeframe. *Id.* at ¶¶ 1.10,

18   4.6.7–8. The Settlement also provides a process for Class Members to submit a Dispute related

19   to the number of Workweeks during the Class or PAGA Period, as indicated in their Notice. *Id.*

20   at ¶ 4.6.2. The Settlement also describes the process for addressing undelivered Notices,

21   including remailing those Notices to a forwarding address within five days or skip-tracing or

22   using other methods to locate a forwarding address. *Id.* at ¶ 4.5.2; Administrator Dec. ¶ 11. The

23   Settlement also adjusts the deadline to object or opt out of the Settlement in the event of a

24   returned or undeliverable Notice. Settlement Agreement ¶ 4.6.1.

25   Plaintiff respectfully requests that this Court set the due date for the Motion for Final

26   Approval for two weeks before the Final Approval Hearing and set the Final Approval Hearing

27   at least 95 days after entering an order granting preliminary approval of the Settlement.

28

---

21

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

**XII.    CONCLUSION**

     For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement.

Dated: January 28, 2025          **LIPPSMITH LLP**

                    By:    /s/ *Graham B. LippSmith*
                           Graham B. LippSmith
                           Celene Chan Andrews
                           Jaclyn L. Anderson

          **LAWYERS *for* JUSTICE, PC**

          Edwin Aiwazian
          Arby Aiwazian
          Joanna Ghosh

          *Attorneys for* Plaintiff

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**