UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMUEL TURNER,

          Plaintiff,

     v.

LTF CLUB MANAGEMENT CO., LLC et al.,

          Defendant.

No.  2:20-cv-00046-DAD-JDP

ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

(Doc. No. 105)

This matter came before the court on March 2, 2026 for a hearing on plaintiff's unopposed motions for final approval of class and PAGA settlement and for attorneys' fees, costs, and service award which was filed on January 26, 2026.  (Doc. No. 105.)  At that hearing, attorneys Selene Chan Andrews and Scarlet Tunney appeared on behalf of plaintiff and the putative class. Attorney Laura Vaughn appeared on behalf of defendant LTF Club Management Co., LLC.  As previously directed by the court, on May 28, 2026, the parties filed a joint notice stating that they have now fully complied with the Class Action Fairness Act ("CAFA") requirements regarding notice to federal and state officials and that such officials have not responded.  (Doc. No. 109.)

     For the reasons explained below, the court will approve plaintiff's motion for final approval of class settlement and grant the motion for attorneys' fees in part.

/////

1

# BACKGROUND

The court previously summarized plaintiff's allegations in its September 3, 2025 order granting plaintiff's motion for preliminary approval of a class action settlement (Doc. No. 104) and will not repeat that summary here. The court also incorporates here the background section of its September 3, 2025 order addressing plaintiff's allegations and the details of the parties' proposed settlement. (*Id.* at 1–7.)

# LEGAL STANDARDS

## A. Rule 23 Settlements

Class actions require the approval of the district court before settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Haro v. Walmart, Inc.*, No. 1:21-cv-00239-NODJ-SKO, 2024 WL 1160492, at \*4 (E.D. Cal. Mar. 18, 2024) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). The first step in the two-step process is preliminary approval. At this stage, the court conducts a preliminary fairness evaluation to determine if notice of the class action settlement should issue to class members and, if applicable, whether the proposed settlement class should be certified. *See* David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th ed.). Under Rule 23(e)(1), the court must direct notice to all class members who would be bound by the settlement proposal if the parties show that "the court will likely be able to:" (i) approve the proposal under Rule 23(e)(2)'s fair, reasonable, and adequate standard; and (ii) certify the proposed settlement class. Fed. R. Civ. P. 23(e)(1); *see also Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at \*5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) (noting that federal courts generally grant preliminary approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

/////

2

has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval").

The second step of the process is the final approval. At the final approval stage, "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the court must consider several factors, including whether: "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate." *Id.* When considering whether "the relief provided for the class is adequate," the court should also consider the following:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

*Id.*

In addition to the two-step review process, Rule 23(e) also requires that: (i) the parties seeking approval file a statement identifying the settlement agreement; (ii) class members be given an opportunity to object; and (iii) no payment be made in connection with forgoing or withdrawing an objection, or forgoing, dismissing, or abandoning an appeal. Fed. R. Civ. P. 23(e)(3), (5).

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve such settlements "only after a fairness hearing and a determination that the settlement is fair, reasonable, and adequate." *Id*. When approval is sought of a settlement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.* In

3

such circumstances, the "settlement approval requires a higher standard of fairness" and a "more exacting review" so as "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 23 also "demand[s] undiluted, even heightened, attention" to the certification requirements when class certification is sought only for purposes of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Accordingly, the district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014).

**B.        Private Attorneys General Act ("PAGA") Settlements**

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees. Cal. Lab. Code § 2699(a).[1] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Thus, a judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*

The PAGA statute imposes several limits on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages or unpaid wages available privately through direct or class action claims. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014), *overruled on other grounds by Quach v. Cal. Com. Club, Inc.*, 16 Cal. 5th 562 (2024), *and abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022); *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 182, 193 (2019), *rev'd in part on other grounds by Viking River Cruises, Inc.*, 596 U.S. 639 (2022). Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the California Labor and

---

[1] An "aggrieved employee" is defined as "any person who was employed by the alleged violator against whom one or more of the alleged violations was committed . . . ." Cal. Lab. Code § 2699(c)(1).

Workforce Development Agency ("LWDA") as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Third, any civil penalties recovered must be divided between the LWDA and the aggrieved employees. *See* Cal. Lab. Code § 2699(i) (2016) (requiring a 75%-25% apportionment); *id.* § 2699(m), (v)(1) (2024) (noting that the 2024 amendments, including the new 65%-35% apportionment requirement, apply only to "civil action[s] brought on or after June 19, 2024").[2] Fourth, and finally, the proposed settlement must be submitted to the LWDA, and a trial court must "review and approve" any settlement of PAGA claims. *Id.* § 2699(s)(2); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (noting that because settling a PAGA claim "compromises a claim that could otherwise be brought be the state," it requires that a court "review and approve any settlement of any civil action pursuant to [PAGA]").

Although there is no binding authority setting forth the appropriate standard of review to be employed for PAGA settlements, California district courts "have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'" *Haralson*, 383 F. Supp. 3d at 972 (quoting *Jordan v. NCI Grp., Inc.*, No. 16-cv-01701-JVS-SP, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018)). This standard is derived principally from the LWDA itself. In commenting on a proposed settlement including both class action and PAGA claims, the LWDA has offered the following guidance:

/////

/////

/////

---

[2] Plaintiff provided notice to the LWDA in accordance with the PAGA on September 17, 2019 and initiated this action on November 21, 2019. (Doc. No. 95 at 3.) The court agrees with the parties that the 75%-25% apportionment of civil penalties between the LWDA and the Aggrieved Employees applies here, since the 2024 amendments are not retroactive. *Cf. Mendoza v. Movement Mortg., LLC*, No. 2:24-cv-03479-DAD-CSK, 2025 WL 1646897, at *4 n.4 (E.D. Cal. June 11, 2025) ("For PAGA actions brought prior to June 19, 2024, plaintiffs received 25% of the penalties and the LWDA received 75% . . . Because this action was commenced after June 19, 2024, the 35% apportionjent applies.").

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's guidance with approval).[3]  Recognizing the distinct issues presented by class actions, this court is persuaded by the LWDA's reasoning cited by the district court in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA portion of the settlement now before this court. *See, e.g.*, *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020); *see also Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499-DJC-CKD, 2025 WL 1557142, at *5 n.3 (E.D. Cal. June 2, 2025).  Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms:  (1) meet the statutory requirements set forth by PAGA; and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.

When a proposed settlement involves overlapping class action and PAGA claims, courts may employ a "sliding scale" in determining if the proposed settlement is "fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1134; *see also Haralson*, 383 F. Supp. 3d at 972 (following *O'Connor*); *McClure v. Brand Energy Serv., LLC*, No. 2:18-cv-01726-KJM-AC, 2021 WL 2168149, at *10 (E.D. Cal. May 27, 2021) (same).  As the district court in *O'Connor* explained:

> For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.  By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA. Likewise, if the settlement resolves the important question of the status of workers as employees entitled to the protection of the Labor Code or contained substantial injunctive relief, this would support

---

[3]  The LWDA has also stated that it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action."  *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC, Doc. No. 736 at 2–3 (N.D. Cal. July 29, 2016).

> PAGA's interest in "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance."

*Id.* at 1134–35 (quoting the LWDA's guidance). At the same time, where "the compensation to the class amount[] is relatively modest when compared to the verdict value, the non-monetary relief is of limited benefit to the class, and the settlement does nothing to clarify [aggrieved workers' rights and obligations], the settlement of the non-PAGA claims does not substantially vindicate PAGA." *Id.* at 1135. Finally, "where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *Id.* at 1134. Plaintiffs' special responsibility to other Aggrieved Employees is especially significant because "PAGA does not require class action procedures, such as notice and opt-out rights." *Id.* Thus,

> [t]he Court must be cognizant of the risk that despite this responsibility, there may be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class.

*Id.*

### DISCUSSION

**A.      Final Certification of Settlement Class**

The court conducted an examination of the class action factors in its prior order granting preliminary approval of the settlement and found certification to be warranted. (Doc. No. 104 at 12–19.) Because no additional substantive issues concerning class certification have been raised, the court need not repeat its prior analysis here and finds that final class action certification is appropriate in this case.

The following class of an estimated 8,132 individuals is therefore certified for purposes of this settlement: "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the Class Period," which extends from "November 21, 2015 through the Preliminary Approval Date of September 3, 2025." (Doc. Nos. 105 at 9; 107 at ¶ 6.) Additionally, plaintiff Samuel Turner was appointed as

7

class representative and attorneys Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers for Justice, PC, and LippSmith LLP (collectively, "class counsel") were appointed as class counsel for settlement purposes in the court's prior order granting preliminary approval of the class action settlement.  (Doc. No. 104 at 36.)  The parties also agreed to appoint Simpluris, Inc. ("Simpluris") as the settlement administrator.  (*Id.*; 105-4 at ¶ 3.)  The parties have specified in their settlement agreement that the administrative costs to Simpluris is $45,300.  (Doc. No. 105 at 12.)  The costs of administering the settlement will be deducted from the gross settlement amount.  (105-1 at 2–3.)

**B.      Final Approval of Class Action Settlement**

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e).  To approve a settlement, a district court must:  (i) ensure notice is sent to all class members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) confirm that the parties seeking approval file a statement identifying the settlement agreement; and (iv) be shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The settlement agreement in this action was previously filed on the court's docket (*see* Doc. No. 39-1 at 18–45), and class members have been given an opportunity to object.

The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.[4]

/////

/////

---

[4]  In granting preliminary approval of the release provisions set forth in the settlement, the court directed the parties "to more clearly state their intentions as to the Released PAGA Claims provision along with any additional authority supporting the scope of that release in their motion for final approval."  (Doc. No. 104 at 32.)  In the motion for final approval, the parties state that the Released PAGA Claims bind all aggrieved employees for the covered period, regardless of whether they opt out of the class action and argue that "settlement resolving PAGA claims binds the State and, by extension, all aggrieved employees whose claims are encompassed therein."  (Doc. No. 105 at 13 (citing *Robinson v. S. Cyts. Oil Co.*, 53 Cal. App. 5th 476, 482 (2020).)  The court is satisfied with the parties' response because unlike "a class action, 'there is no mechanism for opting out of [a] judgment entered on [a] PAGA claim.'"  *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 541 n.5 (2021) (alterations in original) (citation omitted).

1.   Notice

Adequate notice of the class settlement must be provided under Rule 23(e). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 4:13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025.

The court previously approved the proposed class notice in granting preliminary approval of the settlement. (Doc. No. 104 at 32–34.) Following the court's order, defense counsel provided Simpluris with a list of the class members which also included "each Class Member's and Aggrieved Employee's Identification numbers, full names, last known mailing addresses, Social Security Numbers, email addresses, and such other information as was necessary for Simpluris to calculate Workweeks during the Class Period and PAGA Period with Defendant during the Class Period." (Doc. Nos. 105 at 23; 105-4 ¶ 6.) This list included data for 8,140 class members. (Doc. No. 105-4 at ¶ 6.) Simpluris conducted an analysis of the National Change of Address Database, a database maintained by the United States Postal Service. (*Id.* at ¶ 7.) On November 3, 2025, Simpluris sent class notice to class members by first class mail and email. (*Id.* at ¶ 8.) In this regard, the class notice was sent by first class mail to all 8,140 of the class members and "was emailed to seven thousand nine hundred thirty-two (7,932) individuals identified as Class Members who had a valid email address." (*Id.* at ¶¶ 8, 10.) "Of the seven

/////

9

thousand nine hundred thirty-two (7,932) emails sent, one hundred and sixty-three (163) were returned as undeliverable." (*Id.* at ¶ 10.)

Of the 8,140 class members, 6,819 were identified as "Aggrieved Employees." (*Id.* at ¶ 8.) 884 of the class notices sent by first class mail were returned to Simpluris, with 29 of those notices returned with a forwarding address. (*Id.* at ¶ 9.) For the remaining class notices that were returned as undeliverable and without a forwarding address, Simpluris conducted a second address search using Accurint, a Lexis-Nexis research tool. (*Id.*)

Through this method, Simpluris located 546 updated addresses of the class members and mailed a class notice to those updated addresses. (*Id.*) Thus, 308 class notices remain undeliverable. (*Id.*) On February 27, 2026, plaintiff filed a supplemental declaration from Ms. Mary Butler of Simpluris reporting that Simpluris subsequently conducted another audit which revealed that there are 8,132 class members, and 6,819 of those class members are aggrieved employees who will be paid out of the PAGA fund. (Doc. No. 107 at ¶ 6.) To date, no objections have been filed, Simpluris has received no objections, and only eight class members have elected to opt-out of the class within the time prescribed to do so. (*Id.* at ¶¶ 12–13; Doc. No. 107 at ¶ 5.) Having considered the above representations, the court concludes that the best practicable notice of the settlement has been provided in accordance with Rule 23(e). *Giroux v. Essex Prop. Tr., Inc.*, No. 16-cv-01722-HSG, 2019 WL 1207301, at *2 (N.D. Cal. Mar. 14, 2019) (finding identical notice plan "provided the best practicable notice to the Class Members[]" where 2% of the class could not be located), *amended*, No. 16-cv-01722-HSG, 2019 WL 2106587 (N.D. Cal. May 14, 2019); *see also Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902-DAD-SKO, 2021 WL 1813177 (E.D. Cal. May 6, 2021) (finding an estimated 94.4% of the total class members to have received actual notice based on identical mailing efforts adequate).

    2.    Final Fairness Determination

On March 2, 2026, the court held a final fairness hearing, at which class counsel and defense counsel appeared in-person. The court now must determine whether the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

/////

10

At the final approval stage, the primary inquiry is whether the proposed settlement is fundamentally "fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)); *Hanlon*, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Just.*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants, and their strategies, positions and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:[5]

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

---

[5] Federal Rule of Civil Procedure 23(e)(2) provides guidance on what a court should consider to determine whether a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In so determining, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Pro. 23(e)(2).

11

(7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill.*, 361 F.3d at 576 n.7.

Federal Rule of Civil Procedure 23(e)(2) requires the court "to consider 'the terms of any proposed award of attorney's fees' and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair." *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)). Accordingly, when evaluating the adequacy of a class settlement, the court must apply the "heightened scrutiny" set out in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). *Briseño v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021); *see also* Fed. R. Civ. P. 23(e)(2)(C)–(D). The so-called *Bluetooth* factors— also referred to as "subtle signs" of collusion—include:  (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted). "The presence of these three signs is not a death knell—but when they exist, 'they require[ ] the district court to examine them, . . . develop the record to support its final approval decision,' and thereby 'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).

Below, the court first evaluates each *Churchill* factor to determine whether they weigh in favor of final approval of this settlement before turning to the *Bluetooth* factors.

/////

12

a.      *Strength of Plaintiff's Case*

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id*. Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Plaintiff contends that the parties dedicated a significant amount of time evaluating the substance of their claims, defenses, and attendant uncertainty. (Doc. No. 105 at 15.) According to plaintiff, even if he established that violations of the California Labor Code occurred, defendants "likely would characterize those violations as 'initial,' thus, making heightened 'subsequent violation' penalties unwarranted." (*Id.* at 15) (citing Lab. Code § 2699(f)(2) and *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008)). Furthermore, even though PAGA sets forth penalties, plaintiff contends that the court would have the discretion to set such penalties to ensure that they are not "unjust, arbitrary, and oppressive, or confiscatory[]" and settling this action avoids any uncertainty. (Doc. No. 105 at 15) (citing Lab. Code § 2699(e)(2)). In light of plaintiff's representations, the court finds that consideration of this factor weighs in favor of granting final approval. *Sanchez v. Mohawk Indus., Inc.*, No. 1:20-cv-01510-JLT-EPG, 2025 WL 2694749, at *16 (E.D. Cal. Sept. 20, 2025) (reasoning that this factor weighed in favor of final approval because identical representations about the strength of the case indicated that the parties "had sufficient information to evaluate the strengths of the claims, as well as potential PAGA penalties.").

b.      *Risk, Expense, Complexity, and Likely Duration of Further Litigation*

When considering whether the relief for the class is "adequate," the court must consider "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at

13

1276). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-01059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Plaintiff represents that both parties believe they would prevail on their respective positions at the class certification and merits stages of this litigation. (Doc. No. 105 at 16.)  He acknowledges that "[a]lthough wage-and-hour actions are often amenable to resolution for groups of employees, courts sometimes decide otherwise." (*Id.* at 16) (citations omitted).  He further concedes that the court's discretion to set PAGA penalties such that they are not "unjust, arbitrary, and oppressive, or confiscatory" adds further uncertainty to the strength of his case. (*Id.*)  Plaintiff states that the settlement allows the parties to forego "vigorously defend their positions" on, among other things, class certification and the merits. (*Id.*)  In light of plaintiff's uncontested representations, the court finds that consideration of this second factor weighs in favor of granting final approval.  *Padron v. Golden State Phone & Wireless*, No. 16-cv-04076-BLF, 2018 WL 2234550, at *4 (N.D. Cal. May 16, 2018) ("Here, Plaintiff acknowledges that despite the strength of his case, there are risks on obtaining class certification and succeeding on the merits.  Specifically, Plaintiff recognizes that Defendant would strongly argue against class certification in the absence of a settlement.  Plaintiff also considers the possibility that the Court 'would likely exercise its discretion to reduce . . . penalties' even if certification was granted.  As such, the Court finds that this factor weighs in favor of settlement.").

            c.       *Risk of Maintaining Class Action Status Throughout Trial*

Plaintiff contends that the "risk of maintaining class action status through trial weighs in favor of final approval of the Settlement." (Doc. No. 105 at 17.)  Specifically, plaintiff argues that certifying a class of over 8,000 current and former employees "presents complex issues that could undermine certification at class certification and in later stages of litigation." (*Id.* at 16.)  Furthermore, defendant's anticipated defense would include opposing class certification that would require significant and expensive discovery disputes to take place. (*Id.* at 16–17.)  Such disputes surrounding class certification could raise issues that place class members in conflict

with one another thereby placing significant risks on the class's ability to obtain relief. (*Id.* at 17.) Finally, any appeal filed after class certification is resolved presents further risk to the class's recovery and would carry the risk of delaying resolution of this case beyond the time that class members have already waited for redress. The court finds plaintiff's arguments to be persuasive and concludes that consideration of this factor also weighs in favor of granting final approval. *Diaz v. United Parcel Serv., Inc.*, No. 1:22-cv-00246-CDB, 2023 WL 8622325, at *6 (E.D. Cal. Dec. 13, 2023) ("The Court finds avoiding a possible adverse ruling as to certification, trial, and subsequent appeals in this case strongly weighs in favor of settlement rather than further protracted and uncertain litigation. With this settlement, Class Members have an opportunity for an immediate, guaranteed payout instead of prolonged litigation which will run the risk of uncertain recovery.").

> d.    *Amount Offered in the Settlement*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *see also* Fed. R. Civ. P 23(e)(2)(C)–(D). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting *Schwartz v. Dall. Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In addition, the court must consider whether "the proposal treats class members equitably relative to each other" and whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C)–(D).

As noted in the court's order granting preliminary approval, the settlement agreement in this action provides for $187,500.00 in PAGA civil penalties. (Doc. No. 104 at 25.) Under PAGA, 75% of the civil penalties, or $140,625.00, will go to the LWDA and 25%, or $46,875.00,

will be included in the net settlement amount.  (*Id.*); *see* Cal. Lab. Code § 2699(i).  The court previously analyzed the fairness, adequacy, and reasonableness of this award in its preliminary approval of the settlement agreement.  (Doc. No. 104 at 20–25.)  The court incorporates its prior analysis and concludes that the award is fair, reasonable, and adequate in light of PAGA's public policy goals.  Plaintiff previously indicated that he submitted the settlement agreement to the LWDA concurrently with the motion for preliminary approval.  (*Id.* at 20.)  In granting the motion, the court directed plaintiff "to specify whether the LWDA has commented on the proposed settlement and, if so, the substance of its comments."  (*Id.*)  At the hearing on final approval, the parties informed the court that that the LWDA has not objected or otherwise responded to that filing.  Accordingly, the court concludes that the PAGA civil penalties provided for in the settlement agreement comply with the requirements of PAGA and are fair, reasonable, and adequate.

The parties have also agreed to a gross settlement amount of $1,250,000.00.  (Doc. Nos. 104 at 22; 105 at 9.)  In a declaration submitted in support of the motion for final approval, Mary Butler of Simpluris, the appointed administrator, states that after deducting attorneys' fees, costs, the incentive payment, PAGA penalties, individual PAGA awards, and the administration costs, the gross settlement amount payable to the class will be $472,700.00.  (Doc. No. 105-4 at 5.)  This net settlement amount corresponds to approximately 2.3% of plaintiff's maximum potential recovery.  (Doc. No. 104 at 23.)

Plaintiff contends that a review of defendants' data revealed a 34.89% meal rate violation, and that his claims for meal and rest break violations were strongly supported.  (*Id.* at 17–18.)  However, data and expert analysis of punch-time and payroll data revealed that he was less likely to prevail on his claims for unpaid overtime, waiting time penalties, and wage statement errors, because those claims did not "reveal as strong of a consistent or uniform underpayment pattern[.]"  (*Id.* at 18.)  Moreover, the parties could not agree on reliable and statistically sound random sample-based violations rates as to these latter claims.  (*Id.*)  Further, plaintiff was also less likely to recover on the waiting time penalty and wage statement claims because they were

/////

16

derivative of the underlying wage payment claims and there were barriers to "proving a clear, systematic underpayment based upon the payroll data." (*Id.*)

For the same reasons that the court concluded at the preliminary approval stage that the overall settlement amount was adequate, the court similarly finds that consideration of this *Churchill* factor weighs in favor of final approval of the class settlement. *See Zuniga v. House Foods Am. Corp.*, No. 8:22-cv-00372-JWH-JDE, 2025 WL 3145881, at *7 (C.D. Cal. July 8, 2025) (finding that the amount offered in settlement weighed in favor of final approval based on the court's prior analysis of the amount being adequate and fair in its preliminary approval order).

e.    *Extent of Discovery Completed and Stage of the Proceedings*

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).  The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  These concerns are also reflected in Rule 23(e)(2)'s focus on procedural fairness—whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B).

Plaintiff indicates that prior to reaching this settlement, the parties litigated substantive pre-trial civil motions including motions for class certification and summary judgment; undertook fact investigation; formal and informal written discovery; engaged experts; and reviewed thousands of pages of documents and data consisting of employee records, handbooks,

agreements, forms, and policy documentation.  (Doc. No. 105 at 19–20.)  Further, the parties prepared for and attended court proceedings and mediation.  (*Id.* at 20.)  Given the apparent sufficiency of the discovery obtained and the clear arms-length negotiations, the court concludes that consideration of this factor also weighs in favor of approval.  *Brown v. Tetra Tech, Inc.*, No. 2:20-cv-01133-DJC-DMC, 2025 WL 1400295, at *6 (E.D. Cal. May 14, 2025).

> f.      *Experience and Views of Counsel*

In its order granting preliminary approval, the court addressed class counsel's extensive experience in wage and hour class action litigation.  (Doc. No. 104 at 16–17.)  Because class counsel has not changed since the issuance of that order, the court incorporates its prior discussion here.  Class counsel indicates that their "experience and respective views of the Settlement weigh in favor of final approval" and in their view, class counsel "believe that the Settlement is fair, reasonable, adequate, and in the best interest of Class Members."  (Doc. No. 105 at 20.)  Accordingly, the court finds that consideration of this factor, in light of the representations of experienced class counsel, also weighs in favor of granting final approval of the class settlement.

> g.      *Reaction of the Class Members*

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing cases).  The presumption that a settlement is fair, reasonable, and adequate is particularly strong when there is an absence of a single objection to a proposed class action settlement.  *See id.*; *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).  Nevertheless, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill,* 361 F.3d at 577).

Plaintiff contends that class members "overwhelmingly support the proposed settlement[,]" and that only eight class members timely opted out.  (Doc. Nos. 105 at 21; 105-4 at

¶ 12; 107 at ¶ 5.)  Moreover, no class members raised any objections to the settlement at the final fairness hearing.  Accordingly, the court finds that consideration of this factor weighs significantly in favor of granting final approval.

> h.    *Collusion*

Finally, the court considers whether any of the *Bluetooth* factors which may be signs of collusion as recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

The settlement is projected to provide each class member an average payment of $58.13,[6] authorizes attorneys' fees in the amount of $437,500.00, and provides for an additional award of up to $97,000.00 in litigation costs and expenses.  (Doc. Nos. 105 at 26, 29; 105-3 at 269; 107 at ¶ 8.)  The amount of attorneys' fees that the settlement agreement authorizes counsel to recover represents approximately 35% of the settlement fund, which is somewhat on the high end of awards typically approved in the Ninth Circuit.  (Doc. No. 104 at 28); *see also In re Online DVD-Rental*, 779 F.3d at 949 ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (Stating that at the time of the decision "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.").  However, it is not such a high percentage to raise concerns regarding collusion. *Koeppen v. Carvana, LLC*, No. 21-cv-01951-TSH, 2024 WL 3925703, at *9 (N.D. Cal. Aug. 22, 2024) (noting that while an attorneys' fees award amounting to 35% of the common fund is "a red flag, it does not raise a concern regarding collusion.").

Next, the court observes that the settlement agreement does not contain a clear sailing provision.  A clear sailing provision is one in which defendant agrees to not object to class counsel's motion for attorneys' fees.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947 (describing a clear sailing provision).

/////

---

[6]  This is a decrease of $4.76 from the projected average expected payout of $62.88 at the preliminary stage.  (Doc. No. 104 at 30.)

Above, the court has already found that class counsel is not seeking a disproportionate award of attorneys' fees and observes that, if all proposed deductions from the gross settlement amount are approved, the net settlement amount that will be disbursed to class members of $472,700.00 will exceed the amount sought in attorneys' fees of $437,500.00. *Cf. Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019) (finding that an award of attorneys' fees exceeding the amount disbursed to the class is not "*per se* problematic" but requires additional scrutiny by the district court).

The third *Bluetooth* factor, whether the settlement agreement contains a reversionary clause to return unawarded fees to defendant, is not present in this case. (Doc. No. 95-1 at 39) ("The Parties agree that the QSF[7] shall be a non-reversionary fund and that under no circumstance will there be any reversion to Defendants of any of the funds from the Settlement Proceeds or the QSF."). The court therefore finds that consideration of the *Bluetooth* factors does not indicate that this settlement agreement was the result of collusion.

Upon consideration of the *Churchill* factors, the *Bluetooth* factors, and the requirements of PAGA, the court finds on balance that the settlement agreement before the court for final approval is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); Cal. Lab. Code § 2699. Accordingly, the court will grant plaintiffs' motion for final approval of the parties' class action settlement.

**C.      Attorneys' Fees, Costs, and Service Payment**

Plaintiff also moves for: (1) an award of $437,500.00 in attorneys' fees, which constitutes 35% of the gross settlement amount; (2) $95,073.21 in litigation costs; and (3) approval of a $10,000.00 service payment for the class representative. (Doc. No. 105 at 12.) The court will address each award requested below.

/////

/////

_____

[7]  The settlement agreement defines "QSF" as the "Qualified Settlement Fund set up by the Settlement Administrator for the benefit of the Settlement Class Members and from which the Settlement payments shall be made." (Doc. No. 105-3 at 270.)

1.      Attorneys' Fees

The court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund.  *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in common fund cases to choose either method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 14-cv-08822-SJO-E, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Reasons to approve higher awards may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis.  *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55.  Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund.  *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a

21

lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Where, as here, "the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit has authorized courts to "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 at 942; *Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) (applying this principle in a wage-and-hour action).  The court will exercise that discretion here and also apply the lodestar as a cross-check.

a.    *Percentage of the Fund*

The settlement agreement provides for a recovery of up to $437,500.00 in attorneys' fees, which amounts to 35% of the gross settlement fund. (Doc. No. 105-3 at 269, 282.)  Class counsel now seek to recover that full amount.  (Doc. No. 105 at 10.)  This amount exceeds the Ninth Circuit's range of 20–33% in attorneys' fees ordinarily awarded from a common fund.  *See Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK, 2023 WL 11959633, at *5 (C.D. Cal. Feb. 17, 2023) ("Courts in the Ninth Circuit commonly find acceptable requests for attorneys' fees that represent 20% to 33.33% of the total settlement.").  Notably, "[i]n cases where the common fund is under $10 million, fees are often above 25%."  *Moreno v. Beacon Roofing Supply, Inc.*, No. 3:19-cv-00185-GPC-LL, 2020 WL 3960481, at *8 (S.D. Cal. July 13, 2020).  Moreover, courts in this circuit have approved awards equal to 35% of the common fund in wage and hour class actions under certain circumstances, including, for example, where the action involved complex issues, resulted in higher average payouts per class members, or conferred a benefit on the class that goes beyond a monetary award.  *Fronda v. Staffmark Holdings, Inc.*, No. 15-cv-02315-MEJ, 2018 WL 2463101, at *12 (N.D. Cal. June 1, 2018) (collecting wage-and-hour cases where percentages as high as 42% of the common fund were awarded); *see also Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626, at *7–8 (N.D. Cal. Feb. 4, 2021) (awarding 35% in attorneys' fees in a case that changed the defendant's policies and practices, class counsel took the matter on a contingency basis, and counsel engaged in extensive,

22

complex litigation over a four-year period); *Pena v. Taylor Farms Pacific, Inc.*, No. 2:13-cv-01282-KJM-AC, 2021 WL 916257, at *5 (E.D. Cal. Mar. 10, 2021) (approving 35% in wage-and-hour action that presented complex issues, involved nine years of litigation, and resulted in hundreds of dollars in payouts on average for class members).

Plaintiff contends that a 35% recovery is reasonable under the circumstances because class counsel are "well-experienced in wage-and-hour class actions and used that experience to obtain a significant Settlement that includes both a common fund and PAGA penalties." (Doc. No. 105 at 24–25.) Counsel dedicated approximately 1,158.8 hours of total attorney and paralegal time to achieve the resulting settlement. (Doc. No. 105-1 at ¶ 15.) Counsel also anticipates dedicating an additional 50 hours of attorney and paralegal time toward implementing the settlement. (*Id.*)

In granting preliminary approval, the court accepted plaintiff's proposed 35% recovery but noted that "[a]t the final approval stage, however, the court will carefully re-examine the award of attorneys' fees and conduct a final lodestar cross-check." (Doc. No. 104 at 29.) To determine whether the percentage requested is reasonable, courts consider five factors: (1) results achieved; (2) the risk of the litigation; (3) the skill required and quality of worked performed by counsel; (4) contingent nature of the fee and the financial burden; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1047; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. The results achieved is "the most critical factor" in determining the reasonableness of the amount requested. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

As to the first factor, plaintiff contends that class counsel achieved a significant and valuable result for the class by securing a gross settlement amount of $1,250,000.00 with an average estimated settlement payout of $58.13 and an average PAGA payment of $6.87 per PAGA-eligible employee. (Doc. Nos. 105 at 29; 107 at ¶ 8.) As recognized in the court's order granting preliminary approval, counsel secured a settlement amounting to approximately 2.3% of the maximum potential recovery as to all of plaintiff's claims. (Doc. No. 104 at 23.) Other courts have concluded that settlements that comprised a larger percentage of the maximum potential recovery did not support a departure from the benchmark. *Sarabia v. Ricoh USA, Inc.*, No. 8:20-

23

cv-00218-JLS-KES, 2023 WL 3432160, at *5 (C.D. Cal. May 1, 2023) (finding a settlement amount equal to 25.2% of a wage-and-hour class's maximum potential recovery insufficient to depart from the benchmark); *Diaz*, 2023 WL 8622325, at *12 (collecting cases and concluding that a recovery of 8% justified only a benchmark award); *Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-0699-KJN, 2024 WL 36175, at *9 (E.D. Cal. Jan. 3, 2024) (finding that a settlement amounting to approximately 6% of the total potential recovery did not support deviating from the benchmark).  Accordingly, consideration of this factor weighs against an upward departure from the benchmark attorney's fee award.

As to the second factor, "[t]he risk that litigation might result in no recovery is a significant factor in assessing the fairness and reasonableness of an award of attorney's fees." *Diaz*, 2023 WL 8622325, at *12 (citations omitted).  Plaintiff contends that continued litigation presented a substantial risk of the class obtaining no recovery if class certification was denied, if defendant successfully moved for summary judgment, or if plaintiff failed to clear the significant hurdles of proving that the class suffered losses or that defendant's conduct justified the imposition of penalties.  (Doc. No. 105 at 27, 29.)  These concerns are justified and significant. *Calhoun v. Celadon Trucking Servs., Inc.*, No. 16-cv-01351-PSG-FFM, 2017 WL 11631979, at *7 (C.D. Cal. Nov. 13, 2017) (finding that the second factor weighed in favor of departing from the bench mark where "the risks of litigation, including the risk of proving damages at trial, maintaining class status, and the possibility of Defendant prevailing, are real and substantial."). As such, the court finds that consideration of this factor supports an upward departure from the benchmark award.

As to the third factor, while class counsel undoubtedly utilized their collectively extensive experience to obtain the settlement, in the court's view this case does not involve any particularly complex or novel legal issues.  Accordingly, consideration of this factor does not weigh in favor of an upward departure from the benchmark. *Mortley v. Express Pipe & Supply Co., LLC*, No. 8:17-cv-01938-JLS-JDE, 2019 WL 13030315, at *6 (C.D. Cal. May 29, 2019) (concluding that this factor did not weigh in favor of an upward departure where plaintiff failed to "identify any

/////

24

particularly novel or complex legal or factual issue that would support the contention that the skill and quality of the work were beyond what is typically required.").

As to the fourth factor, counsel undoubtedly took risk by dedicating over 1,000 hours to date litigating this case on a contingency basis. (Doc. No. 105 at 31.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Pedraza v. Pier 1 Imports U.S. Inc.*, No. 8:16-cv-01447-JLS-DFM, 2018 WL 11327201, at *5 (C.D. Cal. June 19, 2018) (citation omitted). Here, the risk of taking this case on a contingency basis has been further exacerbated by counsel advancing over $90,000.00 in costs over several years despite the risk of recovering nothing. *Contreras v. Worldwide Flight Servs., Inc.*, No. 18-cv-06036-PSG-SS, 2020 WL 2083017, at *6 (C.D. Cal. Apr. 1, 2020) (concluding that this factor weighed in favor of an upward departure where counsel litigated a case for almost two years and advanced over $40,000.00 in costs despite facing the risk of "walking away with nothing[.]"). Accordingly, consideration of this factor weighs in favor of an upward departure from the benchmark.

As to the final factor, plaintiff argues that empirical studies show that fee awards in class actions average about one-third of the recovery, that courts within the Ninth Circuit typically award 20-33.3% of the total settlement in attorneys' fees, and that 40% contingency fee retainers are common in California. (Doc. No. 105 at 30.) However, a review of the case law reveals that a 33% recovery is more commonly approved in similar actions, particularly where, as here and discussed above, counsel engaged in extensive pre-trial discovery, the case involved substantive pre-trial motion practice, and the case presented weaknesses that would have imposed significant barriers to class-wide recovery if it proceeded forward without a settlement. *Contreras*, 2020 WL 2083017, at *5–8 (approving 33% in a case with a low average class member payment, counsel engaged in pre-trial motion practice, discovery, mediation, and advanced nearly $45,000.00 in costs over a two-year period); *Gallegos v. Atria Mgmt. Co., LLC*, No. 16-cv-00888-JGB-SP, 2019 WL 13295795, at *8 (C.D. Cal. Jan. 28, 2019) (approving 33% in wage and hour action with a low average payment per class member, there were risks with proceeding forward on a case where counsel would potentially recover nothing, and class counsel engaged in extensive

discovery and motion practice); *Bowen ex rel. v. Jea Senior Living Health & Welfare Benefit Plan, LLC*, No. 2:20-cv-02318-KJN, 2023 WL 8527732, at *10–11 (E.D. Cal. Dec. 8, 2023) (approving 33% in a case with a lower average payment, significant weaknesses, taken on a contingency basis, and because 33% is "in line with similar awards in this district[.]").

Having considered all of the factors, the court concludes that 33% of the common fund is the more appropriate percentage for counsel to recover in this case. *See Newell v. Ensign U.S. Drilling (Cal.) Inc.*, No. 1:19-cv-01314-JLT-BAK, 2022 WL 2704551, at *8–10 (E.D. Cal. July 12, 2022) (reducing requested amount of attorneys' fees in wage and hour action and recognizing that courts in "this District regularly reduce[] fee requests that extensively deviate from the benchmark."). Awarding 33% of the total settlement, the amount of attorneys' fees that counsel would recover here amounts to $412,500.00.

b.      *Lodestar Cross-Check*

Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SH, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier can be applied. The Ninth Circuit has found that multipliers between one and four may be applied in appropriate common fund cases. *Vizcaino*, 290 F.3d at 1051 n.6 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation.") (citing *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)).

In support of the pending motion, plaintiff submits declarations from class counsel Celene Chan Andrews of LippSmith, LLP and Vartan Madoyan of Lawyers for Justice, PC. (Doc. Nos. 105-1, 105-2.) Class counsel from LippSmith and Lawyers for Justice have currently billed a combined 1,158.8 hours in this case but anticipate spending an additional 50 hours in connection with "final approval proceedings, settlement implementation, and submissions of final accounting

26

at the end of the Settlement period." (Doc. Nos. 105-1 at ¶¶ 15–16.)  Class counsel represent that they have incurred approximately $1,064,839.00 in attorneys' fees to date and anticipate that number to rise to $1,110,785.00 before this litigation is concluded.  (Doc. No. 105-1 at ¶ 15.)  Because counsel devoted such a large number of hours to the prosecution of this case, they suggest applying a negative multiplier of 0.40 to reach the requested $437,500.00 in attorney's fees.  (Doc. No. 105 at 28.)  Below is a table reflecting a breakdown of the hours that class counsel billed in this case:

| Timekeeper | Firm | Position | Years of Experience | Hourly Rate for 2026 | Number of Hours Billed |
|---|---|---|---|---|---|
| Graham B. LippSmith | LippSmith, LLP | Co-Founder | 23 | $1,250.00 | 150.7 |
| MaryBeth LippSmith | LippSmith, LLP | Co-Founder | 23 | $1,250.00 | 72.6 |
| Celene Chan Andrews | LippSmith, LLP | Partner | 17 | $1,000.00 | 430.6 |
| Jaclyn L. Anderson | LippSmith, LLP | Partner | 17 | $1,000.00 | 37.2 |
| Niki B. Smith | LippSmith, LLP | Paralegal | 7 years as a paralegal | $325.00 | 153.6 |
| Lawyers for Justice | | | | $850.00 | 315.10 |
| **Total Number of Hours** | | | | | 1,159.8[8] |

/////

---

[8]  This number includes one additional hour that attorney Selene Chan Andrews spent appearing at the in-person final approval hearing.  However, the court is unable to add any additional future hours as requested by counsel because the court was not provided any information regarding how any additional attorney time would be spent.  *Sanchez*, 2025 WL 2694749, at *39 (declining to award future hours where counsel failed to explain or provide evidence in support of estimated future hours).

(Doc. Nos. 105-1 at ¶ 15; 105-2 at 6.)  Attached to counsels' declarations are billing records that provide a breakdown of those hours expended in this matter.

With respect to LippSmith LLP, hourly rates of $1,000.00 and $1,250.00 for partners and $325.00 for paralegals are higher than rates that the undersigned has typically approved of in wage-and-hour actions.  *See Munoz v. RDO Equip. Co.*, No. 1:23-cv-00979-DAD-AC, 2025 WL 3625901, at *13 (E.D. Cal. Dec. 12, 2025) (collecting cases and approving the following hourly rates:  (1) $850-900 for attorneys with around 20 years of experience; and (2) $800 for attorney with 15–17 years of experience); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving $200 hourly rate for paralegal); *Avery v. Akima Support Operations, LLC*, No. 2:19-cv-00924-DAD-AC, 2022 WL 4473211, at *13 (E.D. Cal. Sept. 26, 2022) (approving hourly rates ranging from $200 to $300 for ninth- through fifteenth-year paralegals).  Accordingly, the attorney and paralegal hourly rates for LippSmith LLP will be reduced for lodestar crosscheck purposes to be commensurate with hourly rates that have been previously approved by the undersigned.

As to Lawyers for Justice, counsel's declaration also provides a breakdown of the experience for each attorney who worked on this case.  (Doc. No. 105-2 at 8–11) (describing credentials of attorneys with 21 years of experience, 15 years of experience, and 14 years of experience.)  With these details in mind, the court finds Lawyers for Justice's blended hourly rate falls within the range of hourly rates approved in the Eastern District of California for comparably experience counsel.  *See Field v. United States*, No. 2:15-cv-00241-TLN-DB, 2020 WL 903203, at *2 (E.D. Cal. Feb. 25, 2020) (approving a blended hourly rate that fell within the prevailing rates for the Eastern District of California), *supplemented*, No. 2:15-cv-00241-TLN-DB, 2020 WL 1139484 (E.D. Cal. Mar. 9, 2020); *Munoz*, 2025 WL 3625901, at *13.  Accordingly, the court applies the following hourly rates for purposes of the lodestar cross-check:  (1) $900 for Graham. LippSmith; (2) $900 for MaryBeth LippSmith; (3) $800 for Celene Chan Andrews; (4) $800 for Jaclyn Anderson; (5) $200 for Niki Smith; and (6) $850 blended hourly rate for Lawyers for Justice.

/////

28

Having reviewed counsels' billing records the court concludes that the number of attorney hours devoted to this case should be trimmed somewhat for purposes of the crosscheck. Specifically, in the court's view there are a number of vague billing entries (*see e.g.*, Doc. No. 105-1 at 77–78, 84, 101) which impedes the court's ability to conduct a meaningful crosscheck. *See Martinez v. Anning-Johnson Co.*, No. 14-cv-006325-GHK-E, 2016 WL 11759920, at *2 (C.D. Cal. Aug. 3, 2016) (explaining that vague entries "impede a meaningful lodestar cross-check."); *Sarabia*, 2023 WL 3432160, at *9 ("Vague entries . . . do not show efficient billing."). Moreover, many billing entries are tied solely to reviewing emails both among class counsel across law firms and emails with opposing counsel (*see e.g.*, Doc. No. 105-1 at 15–20, 35–38). *See Pedraza v. Pier 1 Imps. U.S. Inc.*, No. 8:16-cv-01447-JLS-DFM, 2018 WL 11327201, at *6 (C.D. Cal. June 19, 2018) (finding review of emails between co-counsel and opposing counsel among the "considerations cast doubt on the reasonableness of the hours billed and the overall lodestar total."); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 982 (S.D. Cal. 2014) (collecting cases and noting that "[c]ourts often discount or altogether exclude hours claimed for intraoffice and administrative e-mails and other intraoffice communications when such communications are the result of overstaffing or inflationary billing practices."). Because the lodestar is being applied as a cross-check of the percentage of recovery detailed above, the court will not identify each and every billing entry of concern in this regard. However, the concerns regarding counsel's billings records detailed above are an indicator of some degree of overbilling and a 10% reduction in the total number of hours billed for lodestar cross-check purposes would be warranted in this action. *See Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-JLT-EPG, 2023 WL 4134656, at *25–27 (E.D. Cal. June 22, 2023) (exercising discretion to apply a 10% reduction to the lodestar after identifying a number of somewhat questionable billing entries).

After adjusting the hourly rates and applying a 10% reduction to the initial lodestar, the court ultimately arrives at a lodestar calculation of $786.388.50. The lodestar amount exceeds the attorney's fees sought by counsel here, which is ordinarily indicative that the requested amount is reasonable. *Shannon v. Sherwood Mgmt. Co.*, No. 19-cv-01101-BAS-JLB, 2020 WL 5891587, at *3 (S.D. Cal. Oct. 5, 2020) (noting that a "negative multiplier suggests that the requested fee

29

award is reasonable.")  Nonetheless, for the reasons stated in the court's analysis of the percentage of fund requested, the court concludes that $412,500.00 remains the reasonable amount of attorney's fees to award in this action.

      2.     Costs

Class counsel also seek to recover the costs and expenses advanced while prosecuting this litigation.  Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."  *Id.*; *see also Ayala v. U.S Xpress Enters., Inc.*, No. 16-cv-00137-GW-KK, 2023 WL 6559786, at *9 (C.D. Cal. Sept. 15, 2023) (concluding that "copying, printing, and carrier costs; court reporter and deposition costs; mediation costs; and travel-related costs" are expenses that are "customarily billed to clients.").

The settlement authorizes recovery of up to $97,000.00 in costs.  (Doc. No. 105-3 at 269.)  As of the filing of the motion for final approval, counsel from LippSmith, LLP incurred $90,121.40 in litigation costs and attorneys at Lawyers for Justice, PC incurred $3,952.54 in costs.  (Doc. Nos. 105-1 at 147; 105-2 at 28.)  Class counsel has provided an accounting of these costs (Doc. Nos. 105-1 at 147; 105-2 at 28), which establish a total of $94,073.94 in costs incurred up to the filing of the motion for final approval.  (Doc. No. 105-1 at ¶ 21.)  These costs include expenses for filings, mediation, data analysis experts, court reporter deposition transcripts, postage, Federal Express, legal research, and copying.  (Doc. Nos. 105-1 at 147; 105-2 at 28.)  At the final approval hearing, class counsel from LippSmith indicated that they have incurred the following additional costs since the filing of the motion for final approval:  (1) $35.59 in Federal Express fees; (2) $78.93 in fees on Lexis Nexis; and (3) $548.12 in fees for traveling to Sacramento from Los Angeles to appear in-person for the final approval hearing, thereby increasing total costs to $94,736.58 as of the date of the hearing.  To date, class counsel

/////

30

has not filed anything further regarding additional costs that they have incurred since the final approval hearing.

The court has reviewed the itemized lists of costs filed in support of the motion for final approval (Doc. Nos. 105-1 at 147; 105-2 at 28) and concludes that they are reasonable and recoverable.  Accordingly, the court will award counsel $94,736.58 in costs.

3.    Service Payment for the Class Representative

Courts frequently approve "service" or "incentive" awards in class action cases.  *W. Publ'g Corp.*, 563 F.3d at 958–59.  Generally speaking, incentive awards are meant to recognize the effort of class representatives "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id*.  The district court evaluates each award individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The courts of the Ninth Circuit typically find incentive awards of $5,000.00 to be "presumptively reasonable."  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (endorsing $5,000 service awards to named representatives); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with the amount courts typically award as incentive payments").  "Higher amounts can be appropriate, such as in employment actions, where a plaintiff risks retaliation or blacklisting as a result of suing her employer."  *Haro v. Walmart, Inc.*, No. 1:21-cv-00239-KES-SKO, 2025 WL 73109, at *15 (E.D. Cal. Jan. 10, 2025).  Still, the Ninth Circuit has stated that "handsome" service payments "relative to the size of the cash payments that can be claimed by class members, raise serious red flags that the defendants may have tacitly bargained for the

/////

31

named plaintiffs' support for the settlement by offering them significant additional cash awards." *Roes*, 944 F.3d at 1057.

Here, plaintiff seeks to recover a $10,000.00 service payment, the maximum amount authorized by the settlement.  (Doc. No. 105 at 32–33.)  This amounts to approximately 0.8% of the MSA and is approximately 172 times greater than the average settlement payment of $58.13 that will be awarded to the class.  This disparity is slightly greater than that which the court expressed concerns about at the preliminary approval stage.  (Doc. No. 104 at 30–31) (noting that the $10,000 incentive award being roughly 159 times greater than the previous estimated average payout of $62.88 "may be disproportionate given the possible disparity with the settlement's average or median award.").

At the hearing, class counsel indicated that the plaintiff Turner dedicated approximately 32 hours of his time assisting counsel with this case.  Class counsel further argued that the requested $10,000.00 service payment is justified because of the risk to future employment that plaintiff Tuner shouldered by being the class representative in this employment action.  This is especially true, counsel argued, because plaintiff is relatively young and still has many more years in the workforce that may be impacted by his decision to be the named plaintiff in an employment class action involving over 8,000 class members.  Counsel also pointed to the fact that plaintiff had to take time off work to appear for a deposition in this case.

In the motion for final approval, counsel asserts that plaintiff Turner "spent dozens of hours working with Class Counsel" on various tasks including "investigation and the initial filing; providing documents related to his employment with Defendants; revising documents with Class Counsel and answering their questions; helping to identify additional documents and witnesses useful to the case." (Doc. No. 105 at 33.)  It is further represented that the named plaintiff made "himself available to answer inquiries as quickly as possible; staying current on case progress; and participating in the settlement process." (Doc. Nos. 105 at 33; 105-5 2–4.)  Plaintiff has also provided the following estimated minimum, median, average, and maximum individual settlement and PAGA payouts to class members under the settlement:

/////

| Payment Type | Minimum | Median | Average | Maximum |
|---|---|---|---|---|
| Individual | $1.13 | $30.60 | $58.13 | $557.66 |
| PAGA | $0.14 | $2.71 | $6.87 | $50.03 |

(Doc. No. 107 at 3.)

While on the higher end of incentive awards, the $10,000 award sought here is nonetheless within the range that judges in this district have approved in some cases. *See, e.g.*, *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2020 WL 1532058, at *11–13 (E.D. Cal. Mar. 31, 2020) (approving $10,000.00 award for named plaintiffs who dedicated over 100 hours assisting counsel in the action); *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 WL 2918361, at *15–16 (E.D. Cal. July 25, 2022) (approving incentive payment award of $10,000 where the average class member payout was $2,216.16). It is also true that here "[p]laintiff[']s actions resulted in a settlement that, if approved, will provide monetary relief to the settlement class." *Ruiz v. JCP Logistics, Inc.*, No. 13-cv-01908-JLS-AN, 2016 WL 6156212, at *11 (C.D. Cal. Aug. 12, 2016).

Still, in this case, the court concludes that the efforts that plaintiff Turner has engaged in throughout this case and the lower average payout per class member justifies an incentive award of $7,500.00, as opposed to the $10,000.00 as requested. *Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*, No. 17-cv-01988-JVS-DFM, 2020 WL 13594812, at *9–10 (C.D. Cal. Mar. 31, 2020) (declining to authorize an incentive award above $7,500.00 where the named plaintiffs dedicated up to 80 hours prosecuting an action that resulted in a lower average payout for each subclasses); *Cohen v. Coca-Cola Co.*, No. 19-cv-04083-JAK-PLA, 2022 WL 22879570, at *5–6 (C.D. Cal. Feb. 18, 2022) (authorizing an incentive award of $7,500.00 where the named plaintiff dedicated approximately 20–24 hours assisting counsel with developing the claims and engaging

/////

/////

/////

/////

33

in the settlement process).  Accordingly, the court will approve a service payment award of $7,500.00 for plaintiff Turner's efforts in this action.[9]

**CONCLUSION**

For the reasons explained above,

1.    Plaintiff's motion for final approval of the class settlement (Doc. No. 105) is GRANTED, and the court approves the parties' settlement agreement as fair, reasonable, and adequate;

2.    Plaintiff's motion for an award of attorneys' fees, costs, and incentive payment is GRANTED as follows:

    a.    Class counsel shall receive $412,500.00 in attorneys' fees and $94,736.58 in costs;

    b.    Plaintiff Samuel Turner shall receive $7,500.00 as an incentive payment;

    c.    Simpluris shall receive $45,300.00 in settlement administration costs;

3.    The parties shall direct payment of 75% of the settlement allocated to the PAGA payment, or $140,625.00, to the LWDA as required by California law, and the remainder of the PAGA payment, $46,875.00, will be included in the net settlement fund;

4.    The parties are DIRECTED to effectuate all terms of the settlement agreement and to comply with all deadlines or procedures for distribution set forth therein;

/////

/////

/////

---

[9]  While not argued in the pending motion, plaintiff also seeks approval of settlement administrator costs for Simpluris in the amount of $45,300.00.  (Doc. No. 105 at 12.)  The court finds this to be reasonable in light of similar awards authorized in this district.  *Munoz v. Giumarra Vineyards Corp.*, No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075, at *27 (E.D. Cal. June 21, 2017) (approving $75,000 in settlement administrator costs for a class with 11,900 members), *report and recommendation adopted*, No. 1:09-cv-00703-AWI-JLT, 2017 WL 7371175 (E.D. Cal. Nov. 27, 2017); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 455 (E.D. Cal. 2013) (collecting cases).

34

5.   This action is DISMISSED with prejudice in accordance with the terms of the parties' settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

6.   The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 12, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

35